**STATE of Minnesota, Respondent,**

v.

**Jaimiah Lamar IRBY, Appellant.**

**No. A11–1852.**

Court of Appeals of Minnesota.

Sept. 4, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, David C. Brown, Assistant County Attorney, Minneapolis, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Theodora Gaïtas, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge; SCHELLHAS, Judge; and LARKIN, Judge.

## OPINION

SCHELLHAS, Judge.

Appellant challenges his convictions for first- and second-degree assault, first-degree burglary, and prohibited possession of a firearm, arguing that (1) the district court judge who presided over his trial was not a de jure or a de facto judge; (2) the district court abused its discretion by admitting evidence of two prior felony convictions to impeach appellant; and (3) the district court violated appellant's constitutional right to a public trial by locking the courtroom doors when giving it final jury instructions. We affirm.

## FACTS

On September 9, 2009, appellant Jaimiah Irby fired several gun shots while in T.D.'s home. One bullet hit T.D. in her right hand and one hit J.D. in his chest. Respondent State of Minnesota charged Irby with first- and second-degree assault against T.D. under Minn.Stat. §§ 609.221, subd. 1, .222, subd. 1 (2008); first- and second-degree assault against J.D. under Minn.Stat. §§ 609.221, subd. 1, .222, subd. 1 (2008); and first-degree burglary under

Minn.Stat. § 609.582, subd. 1(c) (2008). When the jury became deadlocked, the district court declared a mistrial.

The state recharged Irby with the same charges and an additional charge of prohibited person in possession of a firearm under Minn.Stat. § 624.713, subds. 1(2), 2(b) (2008). The district court granted the state's motion to admit evidence of two prior felony convictions to impeach Irby under Minn. R. Evid. 609(a)(1). At the close of testimony, the district court informed the trial spectators that it would lock the courtroom doors before charging the jury. The jury convicted Irby of all counts in June 2011.

This appeal follows.

## ISSUES

I. Did the district court judge forfeit her judicial office by failing to maintain her residency in her judicial district before she presided over Irby's trial?

II. Did the district court clearly abuse its discretion by admitting evidence of two prior felony convictions to impeach Irby under Minn. R. Evid. 609(a)(1)?

III. Did the district court violate Irby's constitutional right to a public trial by locking the courtroom doors before giving its final jury instructions?

## ANALYSIS

**I. Did the district court judge forfeit her judicial office by failing to maintain her residency in her judicial district before she presided over Irby's trial?**

Irby argues that this court should reverse his convictions and grant him a new trial because the district court judge who presided over his trial (the subject judge) was neither a de jure judge nor

a de facto judge because she violated Minn. Const. art. VI, § 4, and Minn.Stat. § 351.02(4) by residing outside of her judicial district. We review de novo whether a judicial officer has authority to preside over a felony trial. *State v. Harris*, 667 N.W.2d 911, 913 (Minn.2003). We do not engage in a plain-error analysis, even though Irby did not raise his objection at trial, because a plain-error analysis is inappropriate in a case involving a fundamental question of judicial authority. *Id.* at 912, 920.

The Minnesota Constitution requires that "[e]ach judge of the district court in any district shall be a resident of that district at the time of his selection and during his continuance in office." Minn. Const. art. VI, § 4. Section 351.02(4) provides that "[e]very office shall become vacant on the happening of ... the incumbent's ceasing to be an inhabitant ... of the district ... for which the incumbent was elected or appointed, or within which the duties of the office are required to be discharged." *See State v. Windom*, 131 Minn. 401, 407–08, 155 N.W. 629, 632 (1915) (applying section 351.02 language to removal analysis regarding municipal court judge). A de jure judge is a judge who "exercises the duties of [the judge's judicial] office for which the [judge] has fulfilled all the qualifications." *Black's Law Dictionary* 1118 (8th ed.2004) (defining "officer de jure" and "judicial officer"). The supreme court has held that a "constitutional defect in the authority of [a] judicial officer" to preside over a "complex felony trial" required reversal and a new trial when the defect arose from the "unconstitutional delegation of authority to [the] judicial officer." *Harris*, 667 N.W.2d at 921. But reversal and a new trial are not required when a defect in a judge's authority is "merely technical" and the judge remains a de facto judge, *id.* at 920 n. 5 (quotation omitted) (noting that "[a] de facto judge is a judge operating under color of law but whose authority is procedurally defective" (quotation omitted)), because "[t]he acts of a *de facto* judge ... are valid," *Windom*, 131 Minn. at 421, 155 N.W. at 637.

 Irby argues that the subject judge ceased to be a de jure judge when she resided outside of her judicial district from July 1, 2009, through September 30, 2009, in violation of the state constitutional requirement under article VI, section 4, that she remain "a resident" of her district and the statutory requirement under section 351.02(4) that she remain "an inhabitant" of her district. Irby further argues that the statutory consequence of a judge residing outside of her district is that the judge vacates her judicial office and, because the subject judge vacated her judicial office, she could not resume being a de jure judge merely by resuming residency within her judicial district. Irby argues that the subject judge could only resume being a de jure judge by being appointed by Minnesota's governor. *See* Minn. Const. art. VI, § 8 ("Whenever there is a vacancy in the office of judge the governor shall appoint in the manner provided by law a qualified person to fill the vacancy until a successor is elected and qualified."). Irby's argument is unpersuasive.

In its disciplinary opinion, the supreme court concluded that the subject judge violated the Minnesota Constitution's residency requirement by residing outside of her judicial district from July 1, 2009, through September 30, 2009. *In re Conduct of Karasov*, 805 N.W.2d 255, 268 (Minn.2011). But the supreme court also concluded that the violation did not warrant removing the subject judge from office; instead, the court concluded that the violation warranted a six-month unpaid suspension and censure. *Id.* at 276–77.

■ Even if the statutory residency-requirement violation rendered the subject judge no longer a de jure judge, we conclude that she remained a de facto judge. *See Windom v. City of Duluth*, 137 Minn. 154, 156, 162 N.W. 1075, 1075–76 (1917) (declining to determine whether a judge's "proper classification" was that of a de facto judge because the case could be resolved on a separate ground). "A de facto judge is a judge operating under color of law but whose authority is procedurally defective." *Harris*, 667 N.W.2d at 920 n. 5 (quotation omitted). "The acts of a *de facto* judge ... are valid." *Windom*, 131 Minn. at 421, 155 N.W. at 637; *see Carli v. Rhener*, 27 Minn. 292, 293, 7 N.W. 139, 139 (1880) ("The acts of [a de facto] officer are valid as respects the public and persons interested therein, and as to them cannot be questioned."); *see also Marckel Co. v. Zitzow*, 218 Minn. 305, 307, 15 N.W.2d 777, 778 (1944) (noting that "the law validates [the] acts" of de facto officers).

> The *de facto* doctrine was introduced into the law as a matter of policy and necessity, to protect the interests of the public and individuals where those interests were involved in the official acts of persons exercising the duties of an office without being lawful officers. It would be a matter of almost intolerable inconvenience, and be productive of many instances of individual hardship and injustice, if third persons, whose interests or necessities require them to rely upon the acts of the occupants of public offices, should be required to ascertain at their peril the legal right to the offices which such occupants are permitted by the state to occupy.

*Burt v. Winona & St. Peter R.R. Co.*, 31 Minn. 472, 476, 18 N.W. 285, 286–87 (1884) (quotation omitted); *see Windom*, 131 Minn. at 420–21, 155 N.W. at 637 (applying the de facto judge doctrine "[t]o avoid useless controversy or litigation").

Whether the de facto judge doctrine applies to district court judges who violate the Minnesota Constitution's judicial residency requirement and section 351.02(4)'s inhabitation requirement is an issue of first impression in Minnesota. But other jurisdictions have persuasively reasoned that the de facto judge doctrine applies to violations of a judicial residency requirement in a state constitution or statute. *See Relative Value Studies, Inc. v. McGraw-Hill Cos.*, 981 P.2d 687, 689 (Colo.App.1999) ("Until and unless [the district court judge] was removed from his office for violation of the [Colorado Constitution's] residency requirement or otherwise, he was still a properly appointed judge of the district court and, thus, was at least a *de facto* judge."); *Hovanec v. Diaz*, 272 Ind. 342, 397 N.E.2d 1249, 1249–50 (1979) (concluding that, even though judge violated Indiana Constitution's residency requirement, he "has acted as a *de facto* officer"); *Baker v. Maryland*, 377 Md. 567, 833 A.2d 1070, 1072, 1086 (2003) ("[E]ven if, by virtue of a change of residence, [the judge] ceased to be a *de jure* judge [under the Maryland Constitution], he was, until his retirement, at the very least a *de facto* judge for the period relevant to this case." (footnote omitted)); *see also Gates v. City of Tenakee Springs*, 954 P.2d 1035, 1039 (Alaska 1998) (holding that "even if [the judge pro tempore] failed to meet the state['s] [statutory] residency requirement, he was a de facto judge").

Irby argues that the de facto judge doctrine does not apply to the subject judge because "continu[ing] to act under the color of an official title" after her residency-requirement violation "amounted to a defect that embodies a strong policy concerning the proper administration of judicial business." (Quotation omitted.) We disagree. The de facto judge doctrine does not apply to "case[s] where the defect in

the underlying statute is not merely technical but embodies a strong policy concerning the proper administration of judicial business." *Harris*, 667 N.W.2d at 920 n. 5 (quotation omitted). The supreme court strongly condemned the subject judge's violation of the Minnesota Constitution's residency requirement, concluding that she "undermined the integrity of the judiciary and the people's trust and confidence in it." *Karasov*, 805 N.W.2d at 275. But the court concluded that the subject judge's conduct was insufficiently serious to warrant her removal from office. *Id.* at 276. And we note that the supreme court's suspension—rather than removal—of the subject judge strongly implies, at the very least, that the court viewed the subject judge as a de facto judge, if not a de jure judge, notwithstanding her residency violation. The supreme court's choice of sanctions against the subject judge leaves room for no other implication.

We therefore conclude that the subject judge's violation of the Minnesota Constitution's residency requirement does not warrant reversal because after her residency violation she remained a de facto judge, if not a de jure judge. We similarly conclude that, even if the subject judge violated section 351.02(4)'s inhabitation requirement, she remained a de facto judge, if not a de jure judge.

## II. Did the district court clearly abuse its discretion by admitting evidence of two prior felony convictions to impeach Irby under Minn. R. Evid. 609(a)(1)?

■ Irby argues that the district court clearly abused its discretion by admitting evidence of two prior felony convictions—his 2001 first-degree aggravated-robbery conviction and his 2008 driving-while-intoxicated conviction—to impeach him under Minn. R. Evid. 609(a)(1). Ap-

pellate courts "will not reverse a district court's ruling on the impeachment of a witness by prior conviction absent a clear abuse of discretion." *State v. Hill*, 801 N.W.2d 646, 651 (Minn.2011) (quotation omitted). District courts may admit evidence of a prior conviction for the purpose of attacking a witness's credibility if the crime "was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect." Minn. R. Evid. 609(a)(1). District courts must determine on the record whether the probative value of the impeachment evidence outweighs its prejudicial effect, based on the five factors set forth in *State v. Jones*, 271 N.W.2d 534, 538 (Minn.1978): "(1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime . . . , (4) the importance of the defendant's testimony, and (5) the centrality of the credibility issue." *Hill*, 801 N.W.2d at 653; *see State v. Swanson*, 707 N.W.2d 645, 655 (Minn.2006) (noting requirement that district courts make determination on the record).

■ Irby argues that the district court insufficiently considered and weighed the *Jones* factors on the record. We disagree. "[A] district court should demonstrate on the record that it has considered and weighed the *Jones* factors." *Swanson*, 707 N.W.2d at 655. In this case, the district court did so. At trial, pursuant to rule 609(a)(1), the district court admitted evidence of Irby's two prior felony convictions for the purpose of impeaching him and provided reasoning on all five *Jones* factors:

[C]onsidering the *Jones* factors, I'm finding that the impeachment value as

felonies, and indicative of seeing Mr. Irby as a whole, that I'm going to allow him to be impeached with the 2000 agg robbery and the DUI, given the fact that they're of recent dates, he has a subsequent history of criminal activity, they're not similar to what he's charged with, his testimony is important and they go to his credibility and allows the jury to see the whole person and assess his general trustworthiness.

We conclude that the district court sufficiently considered and weighed all five *Jones* factors on the record.

 Irby argues that the first *Jones* factor weighed against admitting his driving-under-the-influence conviction because its "impeachment value ... was essentially zero." We disagree because:

> Impeachment through prior convictions allows the fact-finder to make credibility determinations by seeing the whole person ... to judge better the truth of his testimony.... [L]ack of trustworthiness may be evinced by the defendant's abiding and repeated contempt for laws which he is legally and morally bound to obey.... [A ]ny felony conviction is probative of a witness's credibility, and the mere fact that a witness is a convicted felon holds impeachment value.

*Hill,* 801 N.W.2d at 651–52 (quotations and citations omitted).

Irby offers no argument regarding the second, fourth, and fifth *Jones* factors and concedes that his testimony and credibility were important. *See State v. Pendleton,* 725 N.W.2d 717, 729 (Minn.2007) ("If credibility is a central issue in the case, the fourth and fifth *Jones* factors weigh in favor of admission of the prior convictions." (quotation omitted)).

 As to the third *Jones* factor, Irby argues that the factor weighed against admitting evidence of his prior first-degree aggravated-robbery conviction because "the aggravated robbery conviction *was* similar to the charged offenses" of first- and second-degree assault. We agree. "The more similar the alleged offense and the crime underlying a past conviction, the more likely it is that the conviction is more prejudicial than probative." *Swanson,* 707 N.W.2d at 655. Aggravated robbery may include "inflict[ing] bodily harm upon another" or being "armed with a dangerous weapon." Minn. Stat. § 609.245, subd. 1 (2000). Irby's first-degree-assault convictions required proof of "inflict[ing] great bodily harm," Minn.Stat. § 609.221, subd. 1, and Irby's second-degree-assault convictions required proof of "assault[ing] another with a dangerous weapon," Minn.Stat. § 609.222, subd. 1. Moreover, the jury evidenced its interest in Irby's prior robbery conviction by interrupting its deliberations to ask the district court for the "legal definition" of "aggravated robbery (with respect to Mr. Irby's '01 conviction)," which the district court declined to provide. *See State v. Bettin,* 295 N.W.2d 542, 546 (Minn.1980) ("The danger when the past crime is similar to the charged crime is that the likelihood is increased that the jury will use the evidence substantively rather than merely for impeachment purposes."). We therefore conclude that the third *Jones* factor weighed against admission of the first-degree aggravated-robbery conviction due to its similarity to first- and second-degree assault. *Swanson,* 707 N.W.2d at 655 ("Due to the similarity between the crime charged and past convictions, this factor weighs against admission of the assault convictions."). But because only the third *Jones* factor weighed against admitting his aggravated robbery conviction and no *Jones* factors weighed against admitting his driving-under-the-influence conviction, we conclude that the district court did not clearly abuse its discretion under Minn. R.

Evid. 609(a)(1) by admitting Irby's prior felony convictions for aggravated robbery and driving under the influence. *See id.* at 656 (affirming district court's admission of evidence concerning prior felonies under Minn. R. Evid. 609(a)(1) because only third *Jones* factor weighed against admission of appellant's assault convictions and no *Jones* factors weighed against admission of remaining prior convictions).

■ Irby also argues that the district court abused its discretion by failing to provide the jury a cautionary instruction regarding prior-conviction evidence under rule 609(a)(1) "immediately following the prior-conviction evidence." Because Irby did not request such a cautionary instruction at trial, we apply plain-error review. "The plain error analysis allows an appellate court to consider an unobjected-to error that affects a criminal defendant's substantial rights." *State v. Kuhlmann,* 806 N.W.2d 844, 852 (Minn.2011); *see State v. Word,* 755 N.W.2d 776, 787 (Minn.App. 2008) (applying plain-error review to unobjected-to failure to provide an unsolicited limiting instruction regarding use of prior convictions); Minn. R.Crim. P. 31.02 (permitting review of plain error). "Under plain error analysis, we must determine whether there was error, that was plain, and that affected the defendant's substantial rights. If each of these prongs is met, we will address the error only if it seriously affects the fairness and integrity of the judicial proceedings." *Kuhlmann,* 806 N.W.2d at 852–53 (citation omitted); *see* Minn. R. Evid. 103(d) ("Nothing in this rule precludes taking notice ... of plain errors affecting substantial rights although they were not brought to the attention of the court.").

■ We noted in *Word* that "[a]lthough the failure to give the [limiting] instruction may have been plain error, the question is whether it was prejudicial."

*Word,* 755 N.W.2d at 787; *see State v. Bissell,* 368 N.W.2d 281, 283 (Minn.1985) (noting in case where district court *refused* to give requested cautionary instruction that district courts, when admitting *Spreigl* evidence, should "on its own ... give a limiting instruction ... when the evidence is admitted" and that "[t]he same reasoning underlying the requirement[ ] ... applies in the case of Rule 609 impeachment evidence"); *but see State v. McArthur,* 730 N.W.2d 44, 53 (Minn.2007) ("[O]rdinarily it is not plain error for the trial court to fail to *sua sponte* give a[ ] [cautionary] instruction." (quotation omitted)). A district court's failure to sua sponte give a cautionary instruction when admitting evidence of prior convictions under rule 609(a) does not prejudice a defendant's substantial rights if the district court provides "a limiting instruction ... to the jury at the end of the trial" and the state makes "little use of the evidence." *Word,* 755 N.W.2d at 787; *see Bissell,* 368 N.W.2d at 283 (concluding that a district court's refusal to give a *requested* cautionary instruction when rule 609(a) evidence was admitted "was not prejudicial since the court did give such an instruction as part of its final instructions to the jury and since no one suggested that the evidence should be used for any purpose other than determining defendant's credibility as a witness").

■ In this case, Irby correctly notes that "the trial judge provided a cautionary instruction during her final charge to the jury" regarding the limited purpose of rule 609(a)(1) evidence. Moreover, we observe in the record only two references to the prior convictions in the jury's presence. First, Irby admitted to being convicted of "aggravated robbery on January 5th of 2001" and "felony DWI, driving while intoxicated, on October 15th of 2008." Second, the state noted the following in its

closing argument: "In this case, the judge will also instruct you that in regards to credibility you can consider the fact that the defendant has been convicted of aggravated robbery in 2001, and felony DUI in 2008." We therefore conclude that, even if the district court plainly erred by failing to sua sponte provide the jury a cautionary instruction when admitting evidence of Irby's prior convictions under rule 609, the court's error did not prejudice Irby's substantial rights.

### III. Did the district court violate Irby's constitutional right to a public trial by locking the courtroom doors before giving its final jury instructions?

■ Irby argues that the district court committed structural error by closing the courtroom to the public during the jury charge, in violation of Irby's constitutional right to a public trial. We disagree. Appellate courts review de novo whether a defendant's right to a public trial has been violated. *State v. Brown*, 815 N.W.2d 609, 616 (Minn.2012). "In all criminal prosecutions, the accused shall enjoy the right to a ... public trial...." U.S. Const. amend VI; *see* Minn. Const. art. I, § 6 (same). But a district court does not implicate a defendant's right to a public trial when the district court

> lock[s] the courtroom doors during jury instructions[;] the courtroom was never cleared of all spectators[;] ... the judge in fact told the people in the courtroom that they were "welcome to stay"[;] [t]he trial remained open to the public and press already in the courtroom[;] ... the trial court never ordered the removal of any member of the public, the press, or the defendant's family[; and] the jury instructions did not comprise a proportionately large portion of the trial proceedings. .

*Brown*, 815 N.W.2d at 617–18 (footnote omitted).

■ In this case, the court instructed the court's spectators: "[D]uring the jury instructions the courtroom's going to be locked so no one is able to leave. So if you want to leave, this would be the time to do it." The record does not reflect that the district court ever ordered the removal of any member of the public, press, or Irby's family. The jury instructions comprised less than 20 pages of a more than 900–page trial transcript. Although the district court did not expressly state that the trial spectators were welcome to stay, the court's statement indicated that the only persons who were not welcome to stay were those who wanted to leave before the court finished instructing the jury. Irby asserts that "[t]he closure prevented the press and the general public from observing this portion [of the] trial," but Irby does not support that assertion with record evidence, nor does the record support that assertion. *See Brown*, 815 N.W.2d at 618 n. 5 (rejecting defendant's argument that "because the doors were locked, any family member or friend that tried to enter the courtroom during the jury instructions was prevented from doing so" because "nothing in the trial court or postconviction court record provides factual support for any claim that any particular person was denied entrance"). We therefore conclude that the district court's closing of the courtroom door during its final jury instructions to the jury did not implicate Irby's right to a public trial.

### DECISION

We conclude that the subject judge did not automatically forfeit her judicial office under Minn.Stat. § 351.02(4) by residing outside of her district in violation of Minn. Const. art. VI, § 4. We further conclude

that the district court's admission of evidence of Irby's prior felony convictions for first-degree aggravated robbery and driving while intoxicated under rule 609(a)(1) did not prejudice Irby's substantial rights. We further conclude that the district court did not violate Irby's constitutional right to a public trial by closing the courtroom when it gave its final jury instructions.

**Affirmed.**