OPINION
ANDERSON, Justice.
Appellant Jaimiah Lamar Irby argues that he is entitled to a new trial because we found that the judge who presided over his conviction and sentencing, the Honorable Patricia Kerr Karasov, failed to reside in her judicial district from July 1, 2009, to September 30, 2009. Although this period of absence concluded before Irby’s trial began, Irby contends that Judge Karasov automatically forfeited her office under Minn.Stat. § 351.02(4) (2012) when she moved outside her district, and that she therefore lacked the authority to hear his case. Because we conclude that a district court judgeship does not fall within the meaning of “local” office in Minn.Stat. § 351.02(4), and, consequently, this portion of the statute does not apply to Judge Karasov, we affirm.
Appellant Jaimiah Lamar Irby was involved in a 4-year relationship with T.D. The couple had two children together before their relationship ended in approximately March 2009. In September 2009, T.D. obtained an order for protection against Irby after an incident in which he became violent and would not let her leave the apartment they had previously shared. Shortly thereafter, Irby, armed with a handgun, confronted T.D., her mother, and her sister at her mother’s house. Irby *517 eventually shot both T.D. and her sister. Although T.D. and her sister survived, her sister suffered a punctured lung, and both required multiple surgeries.
The State initially charged Irby with first- and second-degree assault against T.D. under Minn.Stat. §§ 609.221, subd. 1, 609.222, subd. 1 (2012); first- and second-degree assault against T.D.’s sister under Minn.Stat. §§ 609.221, subd. 1, 609.222, subd. 1; and first-degree burglary under Minn.Stat. § 609.582, subd. 1(c) (2012). Irby’s first trial, in June 2010, ended in a mistrial as a result of a deadlocked jury. Before Irby’s second trial, held in June 2011, the State added the charge of a prohibited person in possession of a firearm under Minn.Stat. § 624.713, subds. 1(2), 2(b) (2012). The jury found Irby guilty of all charges and the district court entered judgment of conviction. Irby appealed.
Both of Irby’s trials were presided over by Hennepin County District Court Judge Patricia Kerr Karasov. On November 16, 2011, several months after the second of Irby’s two jury trials, we issued an opinion in a disciplinary proceeding involving Judge Karasov. In re Karasov, 805 N.W.2d 255 (Minn.2011). We concluded that the Minnesota Board on Judicial Standards had proven by clear and convincing evidence that Judge Karasov had failed to reside within her judicial district from July 1, 2009, to September 80, 2009, in violation of Article VI, Section 4, of the Minnesota Constitution.[1] In re Karasov, 805 N.W.2d at 268. For this violation, as well as her failure to cooperate with the Board’s investigation, we censured Judge Karasov and suspended her for 6 months without pay. Id. at 277.
In his appeal, Irby argued, for our purposes here, that Judge Karasov’s failure to reside in her district rendered her office vacant under Minn.Stat. § 351.02(4) (providing that every office shall become vacant on “the incumbent’s ceasing to be an inhabitant of the state, or, if the office is local, of the district, county or city for which the incumbent was elected or appointed, or within which the duties of the office are required to be discharged”). Under Irby’s theory, Karasov automatically ceased to be a judge when she moved out of her district in 2009, and thus, despite moving back to the district before Irby’s trial, she had no authority to hear cases absent the Governor appointing her to her former position.
The court of appeals rejected this argument and affirmed Irby’s conviction, relying in part on our decision in In re Karasov. State v. Irby, 820 N.W.2d 30, 35-36 (Minn.App.2012). The court of appeals reasoned that our “suspension — rather than removal — of the subject judge strongly implie[d], at the very least, that the [supreme] court viewed the subject judge as a de facto judge, if not a de jure judge, notwithstanding her residency violation.” Id. at 36.
We granted Irby’s petition for review on the issue of whether he is entitled to a new trial because Judge Karasov’s failure to reside in her district rendered her office vacant under Minn.Stat. § 351.02(4). We reject Irby’s argument and affirm the court of appeals, although on different grounds.
I.
A judicial officer’s authority to conduct a trial is a legal question that we *518 review de novo. State v. Pflepsen, 590 N.W.2d 759, 763 (Minn.1999) (“Questions concerning the authority and jurisdiction of the lower courts are legal issues subject to de novo review.”).[1] Although we generally “limit our review of errors to which the defendant did not object at trial to those constituting plain error affecting substantial rights,” and Irby did not object to Judge Karasov presiding at trial, we have said that in cases “involving a fundamental question of judicial authority, ... plain error analysis is inappropriate.” State v. Harris, 667 N.W.2d 911, 920 (Minn.2003). Therefore, we decline to apply plain-error analysis and instead review de novo.
II.
Minnesota Statutes § 351.02(4) provides, as relevant here:
Every office shall become vacant on the happening of ...:
[[Image here]]
(4) the incumbent’s ceasing to be an inhabitant of the state, or, if the office is local, of the district, county or city for which the incumbent was elected or appointed, or within which the duties of the office are required to be discharged.
(Emphasis added.) When we concluded that she had failed to reside in her district during the summer of 2009, we also noted that “Judge Karasov was residing at her lake home in Chicago City ... during this period.” In re Karasov, 805 N.W.2d at 265. Because Judge Karasov continued to reside in Minnesota during the time in question, she clearly did not “ceas[e] to be an inhabitant of the state.” Minn.Stat. § 351.02(4). Judge Karasov’s office, therefore, did not become vacant under the first portion of the statute.
Since the first portion of Minn.Stat. § 351.02(4) does not apply, Irby’s argument must rely on the second half of that paragraph — that Judge Karasov was no longer an inhabitant of the “district ... for which [she] was elected or appointed, or within which the duties of [her] office are required to be discharged.” But this language is preceded by a qualifier: it applies only “if the office is local.” Id. For Irby’s claim to succeed, a district court judgeship must therefore be a “local” office under the statute. Whether a district court judgeship qualifies as a “local” office under Minn.Stat. § 351.02(4) is a question of first impression for our court, and as a matter of statutory interpretation, it is one that we review de novo. Premier Bank v. Becker Dev., LLC, 785 N.W.2d 753, 758 (Minn.2010).
We begin with the text of the statute.[2] “The goal of statutory interpretation is to ‘ascertain and effectuate the intention of the legislature.’ ” W. Nat’l Ins. Co. v. Thompson, 797 N.W.2d 201, 205 (Minn.2011) (citation omitted); see also Minn.Stat. § 645.16 (2012). When interpreting a statute, we give words and phrases their plain and ordinary meaning. Martin v. Dicklich, 823 N.W.2d 336, 342 (Minn.2012). If the statute is not ambigu *519 ous, we apply its plain meaning. Id. A statute is ambiguous if its language is subject to more than one reasonable interpretation. Id. In this case, Minn.Stat. § 351.02(4) is ambiguous because it is subject to more than one reasonable interpretation.
One reasonable interpretation of Minn.Stat. § 351.02(4) recognizes that district court judges act with statewide authority and therefore do not hold a “local” office within the meaning of section 351.02(4). The phrase “if the office is local” itself is not so plain and unambiguous as to allow for only one interpretation. Cf. Oehler v. City of St. Paul, 174 Minn. 410, 418, 219 N.W. 760, 763 (1928) (“The words ‘office’ and ‘officer’ are terms of vague and variable import, the meaning of which necessarily varies with the connection in which they are used_”). But interpreting the phrase within the context of the entire statute, as we must, see ILHC of Eagan, LLC v. Cnty. of Dakota, 693 N.W.2d 412, 419 (Minn.2005), provides some clarification. While the first part of Minn.Stat. § 351.02(4) refers to the incumbent ceasing to reside in the state, the “local” portion of the statute references ceasing to reside in a particular “district, county or city.” Thus, the language of the statute reasonably supports the construction that statewide offices are only impacted by the first part of the statute, and that a “local” office refers to an office operating beneath the statewide level, such as at the district, county, or city level.
There is constitutional and statutory support for the proposition that a district court judgeship is a statewide office, and therefore not a “local” office. The judicial power of the state is exercised through its courts, including the “district court.” Minn. Const. art. VI, § 1. We have said that the district court is “a constitutional court of original jurisdiction,” and we have recognized the district court for over 100 years as “the one court of general jurisdiction” in the state. In re Civil Commitment of Giem, 742 N.W.2d 422, 429 (Minn.2007) (citation omitted) (internal quotation marks omitted). As a court of general jurisdiction, the district court provides the entry point into a statewide system. Although assigned to, appointed to, or elected from a particular judicial district, a district court judge can “serve and discharge the duties of judge of any court in a judicial district not that judge’s own” when “public convenience and necessity require it.” Minn.Stat. § 2.724, subd. 1 (2012). District court judges interpret and apply state law, and they issue orders that have binding effect statewide. District court judges are “state employees,” Minn.Stat. § 480.181, subd. 1 (2012), and when a vacancy occurs, new judges are appointed by the state’s chief executive officer — the Governor. Minn. Const. art. VI, § 8 (“Whenever there is a vacancy in the office of judge the governor shall appoint in the manner provided by law a qualified person to fill the vacancy until a successor is elected and qualified.”). Thus, it is reasonable to conclude that district courts are the courts of the state itself, not individual “local” offices.[3]
*520 This interpretation, which acknowledges the statewide role held by the district courts and the state-level status conferred on district court judges, is also consistent with the statewide status held by similar constitutional office holders. Although the dissent argues that district court judges hold a local office because they are elected within a particular place and serve the constituents of that area, the dissent fails to explain why district court judges should be distinguished from other similarly-situated constitutional office holders that we have clearly designated as holding state offices. For example, we have held that a seat in the Legislature is a “state office,” even if the legislator gained office through a county election. Lundquist v. Leonard, 652 N.W.2d 33, 35-36 (Minn.2002) (noting, in deciding question of jurisdiction over an election contest, that “an election for a legislative office in a district situated entirely within a single county may be characterized as a county election, [but] a legislative office is undoubtedly a state office” (internal quotation marks omitted)). Similarly, we have recognized that judges who sit on the court of appeals, including those appointed or elected from a particular congressional district, “serve the entire state; their responsibility is to apply the law even-handedly, rather than representing their supporters or their congressional district ‘constituents.’” Clayton v. Kiffmeyer, 688 N.W.2d 117, 131 (Minn.2004). Thus, we conclude that, although judges are appointed or elected to serve a particular district, it is reasonable to view a district court judgeship as a statewide office because of the nature of the office.
Other statutory references also suggest that the Legislature has not viewed district court judges as local office holders. In some election-related contexts, the Leg-Mature has distinguished between “judicial” and “local” offices. See Minn.Stat. § 211B.01, subd. 3 (2012) (defining “candidate” as “an individual who seeks nomination or election to a federal, statewide, legislative, judicial, or local office,” where “local office” includes “special districts, school districts, towns, home rule charter and statutory cities, and counties” (emphasis added)); see also Minn.Stat. § 10A.01, subd. 22 (2012) (defining “local official” as a person who holds office in a political subdivision that controls expenditure or investment of public money). In addition, when the Legislature intends that a statute apply to district court judges, it usually says so. See, e.g., Minn.Stat. § 10A.01, subd. 10 (2012) (“ ‘Candidate’ means an individual who seeks nomination or election as a state constitutional officer, legislator, or judge.” (Emphasis added)); cf. Peterson v. Stafford, 490 N.W.2d 418, 420 (Minn.1992) (explaining historical background for the “recognized goal of distinguishing judicial elections from elections for other offices”).
But reading “local” office to exclude district court judges is not the only reasonable interpretation of the disputed statute. Irby argues for an interpretation of Minn.Stat. § 351.02(4) that includes a district court judge within the scope of “local” office. Irby contends that the language of this statute is expansive because it begins with a reference to “every office,” refers to elected and appointed officials, and does not expressly exclude district court judges. This interpretation focuses on the fact that a “district” is a subdivision of the state, reasoning that because Judge Karasov discharged her duties within the Fourth Judicial District and was elected to serve a particular “district, county or city,” her judgeship was a local office. Under this *521 interpretation and assuming the statute is self-executing, Judge Karasov’s office automatically became vacant when she moved outside her district. Because Judge Karasov was not subsequently appointed to fill this vacancy, Irby argues, Judge Karasov was not a judge at the time of Irby’s trial and had no authority to hear his case.
Irby’s proposed construction, although not unreasonable on its face, necessarily implies that the Legislature has supremacy over judicial discipline through a self-executing statute. This proposed construction creates significant constitutional tension. Construing “local” office to apply to district court judges, and therefore allowing for the automatic removal of a district court judge, raises constitutional issues regarding which branch of government — the legislative or judicial — has the final authority to remove and discipline judges. We have previously recognized the judiciary’s authority to discipline judges based on its inherent judicial power. See In re Kirby, 350 N.W.2d 344, 347 (Minn.1984) (explaining that the judicial branch “has always had an existing inherent power to discipline judges”); In Re Clerk of Lyon Cnty. Courts’ Comp., 308 Minn. 172, 176, 241 N.W.2d 781, 784 (1976) (noting that inherent judicial power “governs that which is essential” to the existence of the judiciary as a functioning court and rests its authority in “the constitutional doctrine of separation of powers”).
While Minn. Const. art. VI, § 9, also gives the Legislature power to discipline judges, stating that “[t]he legislature may also provide for the retirement, removal or other discipline of any judge who is disabled, incompetent or guilty of conduct prejudicial to the administration of justice,” our case law suggests that the Legislature’s ability to discipline judges is limited to the impeachment process. Sylvestre v. State, 298 Minn. 142, 147, 214 N.W.2d 658, 662 (1973) (“The legislature may not abolish the position [of judge of the district court] nor, under the present statutes, remove a judge from office except by impeachment.”).[4] Therefore, concluding, as the dissent would have us do, that the Legislature can remove district court judges through self-executing statutes would recognize a legislative power over the judiciary that is far greater than what we have previously recognized. Construing the Legislature’s authority over the judiciary this broadly would also potentially conflict with Article III, Section 1, of the Minnesota Constitution, which states, “The powers of government shall be divided into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution.”
Thus, Irby’s proposed construction of section 351.02(4) presents a potential constitutional conflict over the respective roles of the legislative and judicial branches regarding judicial discipline authority that, in the end, we conclude is unnecessary to resolve. We have held that “if we can construe a statute to avoid a constitutional confrontation, we are to do so.” In re Civil Commitment of Giem, 742 N.W.2d at 429. This includes construing statutes, wherever possible, to avoid potential separation of powers problems. See id. The canon of constitutional avoidance can be applied where, as here, the statutory lan *522 guage is ambiguous. Clark v. Martinez, 543 U.S. 371, 385, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) (“The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as a means of choosing between them.”). The constitutional-avoidance canon is also appropriately applied here given the lack of a clear statement of legislative intent regarding the intended scope of “local” office. See In re Civil Commitment of Giem, 742 N.W.2d at 430 (applying the constitutional avoidance canon “because the legislature gave no clear indication [in the statute] that it intended to divest the district court of subject matter jurisdiction”). Therefore, we conclude that it is appropriate to utilize the canon of constitutional avoidance in this situation, which leads to the conclusion that district court judgeships are outside the definition of “local” office for purposes of Minn.Stat. § 351.02(4).[5]
III.
Based on the facts of this case, the statutes enacted by the Legislature, and our canons of construction, we conclude that a district court judgeship is not a “local” office under Minn.Stat. § 351.02(4).[6] Judge Karasov, therefore, was not automatically removed from her position by application of this statute when she failed to reside in her district. She had the necessary authority to conduct *523 Irby’s trial, and so we affirm the court of appeals, although on different grounds.
Affirmed.
WRIGHT, J., took no part in the consideration or decision of this case.

. Article VI, Section 4, of the Minnesota Constitution requires, among other provisions, that "[e]ach judge of the district court in any district shall be a resident of that district at the time of his selection and during his continuance in office.” Prior to In re Karasov, we had not interpreted this constitutional requirement. 805 N.W.2d at 264.

. Unlike the dissent, we conclude that Article VI, Section 4, of the Minnesota Constitution, is not the appropriate vehicle for analyzing Irby's claim. Although Article VI, Section 4, states that a district court judge shall be a resident of the district in which the judgeship is held during continuance in office, it does not provide any guidance as to the consequences for failing to maintain residency. We have not previously interpreted Article VI, Section 4, as requiring forfeiture of a judgeship, let alone held that such forfeiture occurs automatically at the time of the violation. Instead, we have held that less severe sanctions can remedy a violation of Article VI, Section 4, including in our discipline of Judge Karasov, in which we declined to remove her from office for her failure to maintain residency in her district. In re Karasov, 805 N.W.2d at 275-76.

. While Minnesota once had many courts of limited jurisdiction that might more logically have fallen within the definition of "local” offices under Minn.Stat. § 351.02(4), "the probate, municipal and county courts of the state ha[ve now] been consolidated into district courts of general jurisdiction.” In re Estate of Janecek, 610 N.W.2d 638, 641 (Minn.2000). See also Maynard E. Pirsig, The Proposed Amendment of the Judiciary Article of the Minnesota Constitution, 40 Minn. L. Rev. 815, 828 (1956) (explaining that local courts have "been almost wholly the municipal courts of the state” as well as justices of the peace and probate court judges who *520 "function[ed] largely on a part time basis and [were] compensated on a fee basis”).

. We note that the statute at issue here, Minn.Stat. § 351.02(4), was in effect and contained substantially similar language to the modern provision at the time Sylvestre was decided. See Minn.Stat. § 351.02(4) (1971); 298 Minn. at 142, 214 N.W.2d at 658.

. The dissent argues that our use of the constitutional avoidance canon is inappropriate because Minn.Stat. § 351.02(4), if it is self-executing, also potentially creates a separation of powers problem as applied to district court judges who move out of state. But it is a needless limitation, and one that we have not previously adopted, to require that our avoidance of the constitutional issue today ensures that a similar issue, based on entirely different facts, will never arise again. Cf. In re Senty-Haugen, 583 N.W.2d 266, 269-70 n. 3 (Minn.1998) (noting that "[i]t is well-settled law that courts should not reach constitutional issues if matters can be resolved otherwise” and refusing to decide a constitutional issue because it had not been properly raised). The constitutional avoidance canon requires that we avoid constitutional confrontations "if it is possible to do so.” State v. Gaiovnik, 794 N.W.2d 643, 648 (Minn.2011). Thus, we will not address the underlying issues of whether Minn.Stat. § 351.02(4) is self-executing and, if it is, how to resolve the potential separation of powers problem until we are presented with a case where avoidance of the constitutional question is not possible. This is not such a case, and to decide whether the statute is self-executing and, if it is, resolve the potential separation of powers problem today based only on a hypothetical set of facts is contrary to our previous statements that we will not indulge in advisory opinions. See State v. N. Star Research & Dev. Inst., 294 Minn. 56, 81, 200 N.W.2d 410, 425 (1972) ("This court does not decide important constitutional questions unless it is necessary to do so in order to dispose of the case. To express any views on the [constitutional] issue would be to indulge in an advisory opinion."); see also Liverpool, N.Y. & Phila. S.S. Co. v. Emigration Comm'rs, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885) (instructing courts to never "anticipate a question of constitutional law in advance of the necessity of deciding it"); Limmer v. Swanson, 806 N.W.2d 838, 839 (Minn.2011) (refusing to issue "an advisory opinion adjudicating separation of powers issues that are not currently active and may not arise in the future”).

. Because we conclude that district court judgeships are not local offices under Minn.Stat. § 351.02(4), we do not need to decide here whether the statute is self-executing as Irby has argued nor whether the de facto officer doctrine would otherwise apply. Although the dissent criticizes the State’s arguments that the statute is not self-executing, the issue of whether Minn.Stat. § 351.02(4) is self-executing is not necessary to the resolution of this case and we do not need to engage in this debate. Our holding today is narrow; we leave those broader questions for another dispute and another day.