*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1876**

State of Minnesota,
Respondent,

vs.

Quince Raymond Campbell,
Appellant.

**Filed December 15, 2014
Affirmed
Smith, Judge**

Ramsey County District Court
File No. 62-CR-12-9603

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

## UNPUBLISHED OPINION

**SMITH**, Judge

We affirm appellant's conviction because the district court's failure to issue a cautionary instruction limiting the use of prior-conviction evidence did not affect

appellant's substantial rights and because there was no prosecutorial misconduct that affected the outcome of the case.

## FACTS

Ramsey County charged appellant Quince Campbell with two counts of first-degree criminal sexual conduct under Minn. Stat. § 609.342, subds. 1(e)(i) and 2(a) (force/coercion) and Minn. Stat. § 609.342, subds. 1(g) and 2(a) (significant relationship) (2012). At trial, the 14-year-old victim, K.G., testified as follows: In the early hours of November 13, 2012, K.G. awoke to find her door opened. She got up and shut the door. When it opened a second time, she found Campbell, her mother's boyfriend who had moved in with the family, standing in the door with only a blanket wrapped around him. Shortly thereafter, she was in the bathroom with Campbell while he was naked, her pants were removed by someone other than herself, and she was sexually assaulted. K.G. ran out of the bathroom when she heard her mother coming upstairs. After testifying that she didn't remember other details of what happened in the bathroom, K.G. said that she truthfully told her mother, the sexual-assault nurse examiner (SANE nurse), and law enforcement what happened.

K.G.'s mother testified that when she came into the bathroom, she saw Campbell sitting on the toilet wearing only a blanket and that he claimed to be using the bathroom, but that he was sitting on top of the closed toilet lid. K.G.'s mother also testified that K.G. said, "he did what he do to you," which she understood to mean sex. Afterward, K.G.'s mother took her to the hospital to be examined.

2

The SANE nurse testified that K.G. said Campbell came into her bedroom and told her to play with his penis. K.G. refused, and he left. But when K.G. went to the bathroom, Campbell was still upstairs. Despite her repeatedly saying that she did not want to, Campbell kissed her on her mouth and breasts and removed her pants. Campbell next inserted his fingers and then his penis in her vagina. When they heard K.G.'s mother coming up the stairs, K.G. ran into her room.

In addition, the SANE nurse testified that the findings of K.G.'s physical examination were consistent with recent trauma. K.G. had scratches on her arm and thigh; shoulder, abdominal, and vaginal pain; and a partially torn hymen. A sample taken from K.G.'s medial bilateral thigh contained a sperm cell that matched Campbell's DNA.

After his arrest, Campbell sent two letters to K.G.'s mother from jail, in violation of a no-contact order, by using another inmate's name on the envelopes. In the letters, Campbell said that K.G. lied about what happened, that there was "no force nor taking," and that he "should have told [K.G.'s mother] when it first started to happen." Campbell testified that his letters were explaining that K.G. was lying and that he should have explained what happened immediately but failed to do so.

In his testimony, Campbell stated that he and K.G.'s mother had sex around midnight and went to sleep in her bedroom. He later woke up, went upstairs in his underwear, and urinated in the bathroom with the door closed. Campbell stated that he opened the door and began washing up when K.G. entered the bathroom and sat down to urinate. He testified that, when she stood up, K.G. tried to kiss him and grab his penis, but he pushed her away. According to Campbell, K.G. then wiped her hand on her thigh

3

and pulled up her pants.  At that point, they heard K.G.'s mother on the stairs, and K.G. ran to her room.  Campbell explained that he didn't tell K.G.'s mother what had happened then because she was too angry to listen.  Campbell also testified that he had been convicted of felony retail theft, attempted armed robbery, possession of a firearm while ineligible, and theft of a motor vehicle.

During closing arguments, the prosecutor said:

> He wanted to get in touch with, as he put it, his girl.  So no little court order or charges against him was going to stop him.  He was going to find a way, even if it meant violating the Court's order and using somebody else's name.  He's going to get the result he wants.  That tells you about his credibility.

Campbell did not object.  The prosecutor later argued, "[L]ook at the location of where the semen was found on [K.G.]  . . . [T]hat is exactly where pre-ejaculate would be found if someone pulls out in a hurry."  Campbell objected to the second remark as facts not in evidence, which the district court overruled.  The jury found Campbell guilty on both counts of first-degree criminal sexual conduct.

## DECISION

### I.

Campbell first argues that the district court committed plain error affecting his substantial rights by failing to issue a cautionary instruction to the jury that his prior convictions could be considered only as impeachment evidence.  Because Campbell did not object to the jury instructions or request a cautionary instruction, we review the district court's decision for plain error.  *State v. Irby*, 820 N.W.2d 30, 38 (Minn. App.

4

2012), *aff'd on other grounds*, 848 N.W.2d 515 (Minn. 2014). To grant relief, there must first be an error, the error must be plain, and it must affect the defendant's substantial rights. *State v. Kuhlmann*, 806 N.W.2d 844, 852 (Minn. 2011). To affect substantial rights, the error must be prejudicial and affect the outcome of the case. *Id.* at 853.

The Minnesota Supreme Court has held that "[t]he same reasoning underlying the requirements spelled out in *Forsman* [for evidence admitted under *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965)] applies in the case of Rule 609 impeachment evidence." *State v. Bissell*, 368 N.W.2d 281, 283 (Minn. 1985). Consequently, impeachment evidence should be accompanied by a cautionary instruction to the jury limiting its use. But this requirement becomes "mandatory only upon the defendant's objection and/or request." *State v. Forsman*, 260 N.W.2d 160, 169 (Minn. 1977).

As in *Forsman*, Campbell's failure to request a cautionary instruction in this case is unexplained. *See id.* at 165. And, as in *Forsman*, the failure of the district court to issue a cautionary instruction, in the absence of a request, is not reversible error.

## II.

Appellant next argues that the prosecutor committed misconduct by arguing facts not in the record and misusing character evidence to establish that appellant acted in conformity with a propensity to break the law.

### A.

Campbell first argues that the prosecutor's statement, "[L]ook at the location of where the semen was found on [K.G.] And you will see in Exhibit 14 that is exactly where pre-ejaculate would be found if someone pulls out in a hurry," was misconduct

5

because there was no testimony about what pre-ejaculate was or where it was likely to occur and that the statement was not a reasonable inference based on the evidence presented at trial. At trial, Campbell objected to the remark and was overruled.

During closing argument, the prosecutor has "the right to present to the jury all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be drawn therefrom." *State v. Wahlberg*, 296 N.W.2d 408, 419 (Minn. 1980). The closing argument must be viewed as a whole. *State v. Walsh*, 495 N.W.2d 602, 607 (Minn. 1993). If we find misconduct, a new trial will not be granted if the error is harmless beyond a reasonable doubt, meaning the verdict was not attributable to the error. *State v. Swanson*, 707 N.W.2d 645, 658 (Minn. 2006).

The testimony and evidence presented at trial provided a sufficient basis for the logical inference that Campbell's DNA was found on K.G.'s thigh because he was interrupted while sexually assaulting her. First, the forensic scientist testified that the sperm cell found on K.G.'s thigh matched Campbell's DNA. Second, the SANE nurse testified that K.G. said that she ran from the bathroom when they heard K.G.'s mother coming upstairs and that K.G. was not certain whether Campbell ejaculated. Finally, appeals to common sense do not equate to facts not in evidence. *See State v. Jones*, 753 N.W.2d 677, 692 (Minn. 2008) (holding that jurors may consider their own experiences in evaluating the evidence presented). Although no witness testified to the definition of "pre-ejaculate," the prosecutor permissibly argued that the sound of K.G.'s mother interrupted the assault. And because Campbell's sperm was found on K.G.'s thigh because of the sexual assault, which did not include ejaculation, the jury could apply

6

common sense to fill in the definitional gap. Therefore, we hold that there was no prosecutorial misconduct based on argument of facts not in the record because the prosecutor presented a reasonable inference based on the evidence.

**B.**

Campbell next argues that the prosecutor committed misconduct by arguing that the letters Campbell sent in violation of the no-contact order reflected his lack of credibility and implied that he should be convicted because he had a propensity to break the law.

A defendant generally must object to prosecutorial misconduct, or the issue is waived. *State v. Lehman*, 749 N.W.2d 76, 86 (Minn. App. 2008), *review denied* (Minn. Aug. 5, 2008). Only when the misconduct is unduly prejudicial will relief be granted absent a trial objection. *State v. Whittaker*, 568 N.W.2d 440, 450 (Minn. 1997). When the defendant fails to object, prosecutorial misconduct is reviewed under a modified plain-error standard. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). For the alleged conduct to be plain error, the prosecutor should have known that the conduct was improper. *Id.* at 299-300. If such improper conduct is found, the state bears the burden of proving that there is no reasonable likelihood that the absence of the misconduct had a significant effect on the jury's verdict. *Id.* at 302.

When the district court permitted testimony that Campbell sent the letters while a no-contact order was in place, it stated, "I overruled the objection because it was coming in not for the purpose of describing any bad act but for the purpose of explaining the situation of another name . . . . I also think it comes in under relationship evidence. I

think it's admissible." Prosecutors have a duty not to elicit clearly inadmissible evidence, even if the district court has not ruled the evidence inadmissible. *State v. Fields*, 730 N.W.2d 777, 782 n.1 (Minn. 2007).

Here, the evidence was not admissible as relationship evidence because it did not meet any of the enumerated categories of similar domestic conduct. *See* Minn. Stat. § 634.20 (Supp. 2013). In addition, the letters did not demonstrate a "strained relationship" between the defendant and the victim because appellant sent them to the mother, not K.G. *See State v. Mills*, 562 N.W.2d 276, 285 (Minn. 1997) (holding that "strained relationship" evidence is admissible to establish motive or intent). Therefore, the prosecutor committed misconduct by offering the evidence for an improper purpose, and the district court's ruling was error. However, the error was not plain because it was not clear whether the evidence was admissible for other purposes. Moreover, there is no reasonable likelihood that the error had a significant effect on the verdict because the letters were admissible as statements by a party-opponent. Minn. R. Evid. 801(d)(2).

**Affirmed.**