*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0328**

State of Minnesota,
Respondent,

vs.

Thomas Eugene Sirois,
Appellant.

**Filed January 25, 2016
Affirmed
Ross, Judge**

Anoka County District Court
File No. 02-CR-13-170

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Jon C. Audette, Assistant County Attorney, Anoka, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Hooten, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

A jury convicted Thomas Sirois of second- and third-degree assault for stabbing his neighbor during one of many altercations. Sirois argues that this court should reverse his convictions because the district court failed to give a cautionary, limiting instruction after

the jury heard about Sirois's prior felony conviction. Although we agree that the district court committed plain error by failing to caution the jury, we affirm because the omission did not affect Sirois's substantial rights.

**FACTS**

Sirois and P.D. are neighbors in Nowthen, Minnesota. Sirois and P.D. had a strained relationship for some time, beginning when Sirois allegedly called police to report P.D.'s cutting wood on someone else's property. Each neighbor began claiming he was being harassed by the other. The two exchanged blows in the summer of 2012, and each called the police. The police charged no one.

Things boiled over on January 4, 2013. Sirois stabbed P.D. several times. No one other than Sirois and P.D. witnessed the stabbing. The state charged Sirois with second- and third-degree assault. At Sirois's trial, the two men gave different accounts of the fight. P.D. testified that Sirois stabbed him after a scuffle, and Sirois testified that he was defending himself from an unprovoked beating by P.D.

P.D.'s version goes like this. P.D. was returning home after several days of over-the-road truck driving. He took a detour in Nowthen and ended up at an intersection near Sirois's home. P.D. saw a pick-up truck's taillights down a dead-end road, and he waited, observing, thinking someone may be either lost or up to trouble. P.D. testified that the truck came toward him and stopped abruptly and that Sirois stepped out, apparently drunk. Then Sirois walked up to P.D.'s truck and started swinging at him through the open driver's window. P.D. says he pushed the door open to force Sirois away, stepped out of his truck, and joined Sirois in the fight. Sirois retreated after P.D. landed a few punches, and P.D.

2

returned to his truck, thinking the bout was over. But Sirois came back and drew a knife while P.D. sat in his truck. He stabbed P.D. in his chest, right side, groin, right thigh, and right knee. P.D. testified that he tried to kick Sirois with his left foot but that he was unsure if he connected with force. Unable to locate his phone, P.D. pretended to dial 9-1-1 and Sirois fled. Before he drove home, P.D. reached an emergency dispatcher. An ambulance took him to the hospital.

Sirois's version goes this way. Sirois testified that he came home from work, picked up his dog, and left after an hour. He said he drank nothing at home. He stopped at the home of a neighbor, T.H., to ask him whether he saw a car in Sirois's driveway the night before. After talking with T.H., Sirois went to a restaurant, where he drank three beers in about two hours. Sirois then drove home, but, near his house, he said he saw a pick-up truck blocking the road. P.D. was sitting in the truck and was saying something through the open window. Sirois left his truck to hear what P.D. was saying. Sirois testified that P.D. then got out and punched him in the nose. P.D. hit Sirois repeatedly and kicked him in the ribs. When Sirois tried to crawl away, P.D. held him down and punched him in the temple. Sirois testified that P.D. said he was going to kill him, so Sirois pulled out a knife and showed it to P.D. to dissuade him. But P.D. did not stop attacking, and Sirois testified that he therefore used the knife to "kind of poke[] . . . at him to get him off." Sirois testified that he may have connected several times, but he could not tell where he stabbed P.D. partly because P.D. wore thick winter clothing and partly because Sirois was hysterical. P.D. returned to his truck.

3

Sirois added that when he tried to drive around P.D.'s truck to leave, his truck slid into the ditch and brushed against a tree. Sirois said that he ran down the driveway to his house, dialing 9-1-1 on the way. He testified that when he got inside his house he grabbed a bottle of liquor and took four or five big gulps. He said he then went back outside to look for his dog. He said he began hyperventilating and collapsed on the driveway.

Sirois was also taken to the hospital. There, staff drew his blood for chemical testing, revealing an alcohol concentration of 0.18.  Medical records show that Sirois had multiple rib fractures on his right side, a nasal fracture, multiple contusions and abrasions, swelling around his left eye, and a minor closed-head injury.

Deputies also testified. Deputy Troy Edmond testified that he and another deputy found Sirois lying in his driveway, smelling heavily of an alcoholic beverage and seeming intoxicated. The state introduced both P.D. and Sirois's 9-1-1 calls. Although P.D.'s call was fairly coherent, Sirois's call consisted mainly of slurred, unintelligible shouting. The state also called T.H., who testified that Sirois had appeared intoxicated when he stopped at his house.

Sirois's attorney questioned him about a prior felony conviction. Sirois testified that he had been convicted of a felony about ten years earlier. When Sirois's attorney began to question him regarding how the felony conviction came about, he withdrew the question after the judge called a bench conference. No one else mentioned Sirois's prior felony. The district court did not caution the jury to restrict how it may consider the prior felony.

The jury found Sirois guilty of second- and third-degree assault. Sirois appeals.

4

**D E C I S I O N**

Sirois argues that we should reverse his conviction because the district court failed to give a cautionary instruction about the evidence of his prior felony conviction. Because Sirois did not request a cautionary instruction during trial, we review only for plain error. *State v. Irby*, 820 N.W.2d 30, 38 (Minn. App. 2012), *aff'd on other grounds*, 848 N.W.2d 515 (Minn. 2014). In a plain-error analysis, we determine whether there was an error, whether the error was plain, and whether the error affected the defendant's substantial rights. *State v. Kuhlmann*, 806 N.W.2d 844, 852 (Minn. 2011). If each element is met, we will reverse the conviction if the error "seriously affects the fairness and integrity of the judicial proceedings." *Id.* at 852–53.

A witness's felony conviction may be used to impeach his credibility if the court determines that the conviction's probative value outweighs its prejudicial effect. Minn. R. Evid. 609(a). If a district court allows the conviction evidence, it should immediately give a limiting instruction cautioning the jury that it may consider the evidence only insofar as it impeaches credibility. *State v. Bissell*, 368 N.W.2d 281, 283 (Minn. 1985). The court should give the cautionary instruction even when the defendant introduces evidence of his own prior conviction. *Id.* It is not ordinarily plain error for the district court to fail to give a *sua sponte* cautionary instruction. *State v. Vance*, 714 N.W.2d 428, 442–43 (Minn. 2006). But the requirement for a prompt, *sua sponte* instruction is so well settled, we hold that the district court's failure to give the instruction here constitutes plain error.

We will not reverse on this basis, however, because we also hold that the failure to issue a cautionary instruction did not affect Sirois's substantial rights. To show his

5

substantial rights were affected, a defendant must establish that "there is a reasonable likelihood that the error had a significant effect on the verdict of the jury." *State v. Word*, 755 N.W.2d 776, 782 (Minn. App. 2008). That the jury heard only one mentioning of Sirois's prior felony weighs against finding prejudice. *See Irby*, 820 N.W.2d at 38–39 (observing only two references were made to the defendant's prior convictions and finding no prejudice). And no one suggested that the prior felony should be used for any purpose other than impeachment. *See Bissell*, 368 N.W.2d at 283 (finding no prejudice where "no one suggested that the evidence should be used for any purpose other than determining defendant's credibility as a witness"). Nor did either attorney elicit any details of Sirois's prior felony. We have previously reasoned that the lack of detail minimizes the likelihood that the jury found a defendant guilty on the basis of similar-crimes evidence. *See State v. Vanhouse*, 634 N.W.2d 715, 720 (Minn. App. 2001), *review denied* (Minn. Dec. 11, 2001). Although Sirois's attorney began to ask how Sirois obtained the conviction, Sirois never answered.

Sirois argues that his substantial rights were prejudiced because this was a close case in which his credibility was the sole issue at trial. But other credibility-damaging factors dilute his argument. For example, the jury heard that Sirois's alcohol concentration was 0.18. And the jury may have found implausible Sirois's attempt to explain away his level of intoxication by claiming that he drank four or five big gulps of liquor only *after* the fight. T.H. told the jury that Sirois was already drunk earlier that evening. This testimony would tend both to establish that Sirois lied to the jury about his alcohol consumption and that his intoxication had been at a level high enough to impair his ability

6

to perceive events accurately. Given that the jury was given significant reason to doubt Sirois's testimony and that the reference to Sirois's prior felony was very brief and lacking any incriminating details, we hold that there is no reasonable likelihood that the district court's error affected Sirois's substantial rights.

**Affirmed.**