State Senator Warren LIMMER, et al., Petitioners,

v.

Lori SWANSON in her official capacity as Attorney General, Mark Dayton in his official capacity as Governor, Jim Showalter in his official capacity as Commissioner of the Department of Management and Budget, and Kathleen R. Gearin in her official capacity as Chief Judge of the Ramsey County District Court, Respondents,

League of Minnesota Cities, et al., Intervenors.

No. A11–1222.

Supreme Court of Minnesota.

Nov. 30, 2011.

---

## ORDER

On July 8, 2011, petitioners filed a petition for writ of quo warranto challenging the authority of the Ramsey County District Court to authorize expenditures by any executive branch agency in the absence of legislative appropriations, the authority of the Attorney General to seek authorization for such expenditures, and the authority of the Commissioner of the Minnesota Department of Management and Budget to make payments for executive branch agency expenditures as authorized by the district court. The matter was fully briefed on the merits.

On July 19, 2011, the Legislature passed appropriation bills for all state agencies (except for the Department of Agriculture, for which appropriation was passed before the end of the state's fiscal year). The

appropriation bills were signed into law by the Governor on July 20, 2011. Each appropriation bill passed on July 19, 2011, is retroactive to July 1, 2011, "and supersedes and replaces funding authorized by" the Ramsey County District Court.

By order filed on August 30, 2011, we ordered the parties to show cause why this matter should not be dismissed as moot. We received responses from petitioners and from Attorney General Swanson. The Governor did not submit a substantive response.

■■■ We generally dismiss a matter as moot when "an event occurs that makes a decision on the merits unnecessary or an award of effective relief impossible...." *Application of Minnegasco*, 565 N.W.2d 706, 710 (Minn.1997). The petition for writ of quo warranto sought "an order enjoining the Respondents from further Court proceedings seeking court orders which violate the state legislature's exclusive prerogatives to appropriate funds and enjoining the Respondents from any other executive or judicial actions which violate the state legislature's exclusive prerogatives to appropriate funds." Now that the Legislature has passed, and the Governor has signed, appropriations for each state agency retroactive to the start of the biennium, there are no further district court proceedings seeking funding and we can no longer grant the relief petitioners seek in their petition for writ of quo warranto.

We have, however, recognized circumstances in which we may choose to hear a case even though it is otherwise moot. We have heard and decided matters that were otherwise moot because the challenged actions were too short in duration to be fully litigated before they were rendered moot and there was a reasonable expectation that the complaining party would be subject to the same action again. *See, e.g., In re Schmidt*, 443 N.W.2d 824, 826 (Minn.

1989). We have also occasionally exercised our discretion to hear and decide otherwise moot cases that were "functionally justiciable" when those cases presented important issues of statewide significance. *See, e.g., State v. Rud*, 359 N.W.2d 573, 576 (Minn.1984). We agree with petitioners that the questions presented in this case are important ones that have statewide significance to the people of Minnesota, and that this case is functionally justiciable in the sense that "the record contains the raw material ... traditionally associated with effective judicial decision-making." *Id.* We nevertheless conclude that we should not exercise our discretion to make an exception to the mootness doctrine in this case.

The petition asks us to resolve fundamental constitutional questions about the relative powers of the three branches of our government. We generally do "not decide important constitutional questions unless it is necessary to do so...." *State v. N. Star Research Dev. Inst.*, 294 Minn. 56, 81, 200 N.W.2d 410, 425 (1972). The constitutional questions posed by this case are currently moot and will not arise again unless the legislative and executive branches fail to agree on a budget to fund a future biennium. In addition, the legislative and executive branches have the ability to put mechanisms in place that would ensure that the district court is not again called upon to authorize expenditures by executive branch agencies in the absence of legislative appropriations, even if a budget impasse were to occur. Resolution of these budget issues by the other branches through the political process is preferable to our issuance of an advisory opinion adjudicating separation of powers issues that are not currently active and may not arise in the future. We therefore decline to apply here the exceptions to the

mootness doctrine recognized in our case law.[1]

Based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that the petition for writ of quo warranto is dismissed as moot.

BY THE COURT:

/s/Lorie S. Gildea
Chief Justice

ANDERSON, PAUL H., Justice (concurring).

I concur in the result reached by the majority, but write separately because our decision requires some additional explanation. The petition challenging the authority of the Ramsey County District Court to authorize expenditures by any executive branch agency in the absence of legislative appropriations must be dismissed because of mootness. After the petition was filed, the Legislature passed and the Governor signed appropriations for each state agency; thus we can no longer grant the relief petitioners seek.

Moreover, none of the exceptions to our general mootness rule are applicable. As the majority points out, we have previously established certain circumstances under which we can hear a case even though the case is otherwise moot. But these exceptions to our general rule on mootness are narrow and their use must be treated with caution, even delicacy. This is particularly true when, as here, we are being asked to render what may be considered an advisory opinion on a fundamental question about the relative powers of the three branches of state government.

Judicial restraint is a principle underlying our reluctance to wade into an issue that involves the opposition between the constitution, the law, the power of the judiciary, and the power of the other two branches of government. Our restraint is based upon a longstanding and deeply rooted principle in our jurisprudence—a principle that dates back more than 200 years to *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), and that case's progeny. The dissent is correct when it quotes *Marbury* for "the premise that it is the province and duty of the judicial department to say what the law is." *Id.* at 177. But *Marbury* and its progeny stand for much more than this premise—they tell us when and how we are able to determine "what the law is." *Id.*

In one of *Marbury*'s progeny, Chief Justice John Marshall articulated the proper role for courts in circumstances like those before us. *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 128, 3 L.Ed. 162 (1810). The main question in *Fletcher* involved the validity of an act by the Georgia Legislature, and while the legacy of *Fletcher* is complex, it clearly articulates Chief Justice Marshall's concern about the need to "separate politics from law...." *See The Oxford Companion to the Supreme Court of the United States* 305 (Kermit Hall ed., 1992). In a "famous" passage in that opinion, Chief Justice Marshall emphasized the necessity for "judicial restraint" and the need to establish "the limits of judicial review." *See* Jean Edward Smith, *John Marshall: Definer of a Nation* 390 (1996). In *Fletcher*, Chief Justice Marshall said:

1. We reject the suggestion in the dissent that by maintaining our traditional institutional reticence on issues of constitutional magnitude, particularly those that are moot, we either create the perception of or condone violation of constitutional provisions.

The question, whether a law be void for its repugnancy to the constitution, is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative, in a doubtful case. The [C]ourt, when impelled by duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligations which that station imposes. But it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other.

10 U.S. (6 Cranch) at 128 (1810).

In essence, Chief Justice Marshall told us in *Fletcher* that when we are faced with a situation like the one before us today, we must be mindful of the "solemn obligations which [this] station imposes" upon us. *Id.* We are to proceed with caution and we are not to act on slight implication or vague conjecture. *Id.* Marshall is telling us that there are times when we must pause a bit, stand back, carefully view the landscape, and unless mandated by the law or compelled by our own "solemn obligations" or "duty," we are to stand down so that the other two branches—the executive and the legislative—can attempt to resolve a particular issue.

When viewed in this context, it should be evident that our decision to dismiss the petition is much less a matter of discretion, choice, or preference than it may appear at first blush. Rather, it is more about an obligation, even a mandate, to do what is expected—even required—of us by the two constitutions under which we function and the over 200 years of jurisprudence we are bound to look to for guidance. Today, we appropriately defer to the Legislature and the Executive so that they have a further opportunity to do their job.

STRAS, JUSTICE (concurring).

I join the concurrence of Justice Paul H. Anderson.

PAGE, J. (dissenting).

I respectfully dissent.

This case came to us in the midst of a constitutional crisis in Minnesota government, triggered by the failure of the executive and legislative branches to reach agreement on appropriations for most state agencies and for the judicial branch for the 2011–2013 biennium. As a result, for the third time in a decade it fell to a single district court judge in Ramsey County to decide which state agencies—if any—would continue to operate and, by extension, which functions—if any—the state government would continue to perform.

In 2011, as in 2005 and 2001, a single district court judge was required to decide fundamental questions about the structure of our state government and to reconcile two competing provisions of the Minnesota Constitution. On one hand, article III, section 1, of the Minnesota Constitution provides:

The powers of government shall be divided into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution.

On the other hand, article XI, section 1, of the Minnesota Constitution provides:

No money shall be paid out of the treasury of this state except in pursuance of an appropriation by law.

The district court's reconciliation of these provisions required that it answer the very questions this court declines to answer today: whether the Minnesota Constitution permits the judiciary to authorize state agencies to operate and to determine the functions those state agencies may perform in the absence of legislative appropriations; whether the Minnesota Constitution *permits* expenditures of state funds in the absence of legislative appropriation; whether a *failure* to fund certain governmental functions contravenes the Minnesota Constitution; and whether the federal Constitution or federal law can authorize the expenditure of state funds in the absence of legislative appropriation.[1]

The court acknowledges that this case is functionally justiciable and that the issues it presents are "fundamental constitutional questions about the relative powers of the three branches of our government." The court nevertheless dismisses the petition for writ of quo warranto because it deems it preferable that the other branches of government resolve their budget issues, rather than that we resolve the fundamental constitutional questions.

It is precisely because of the questions presented by the petition *about the powers of the judicial branch* that the court must hear and decide this matter. "It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803).[2] By failing to address the questions posed by the petition relating to the separation of powers, the court creates the perception—if not condones the reality—that the judicial branch has violated both constitutional

1. Indeed, in 2011 it fell to a single retired district court judge to decide whether, and how much of, the judicial branch itself would continue to operate beyond June 30. The judge ordered the judicial branch to "continue to perform the functions of that branch necessary to fulfill its obligations, and to ensure citizens' rights, under the Minnesota Constitution and the U.S. Constitution" after June 30 and ordered the Commissioner of the Department of Management and Budget to "timely issue checks and process such funds as necessary to pay for such obligations so that the functions of the judicial branch can be discharged." *In re Temp. Funding of Core Functions of the Judicial Branch of the State of Minnesota,* No. 62–CV–5361, Order at 6 (Ramsey Cnty. Dist. Ct. filed June 28, 2011). It was this order that made possible the proceedings before the special master after June 30, which proceedings these petitioners sought to enjoin. That a single retired district court judge can, without appellate review, determine whether and to what extent the judicial branch (including this court) would continue to operate in the absence of legislative appropriation, by itself, raises significant constitutional questions. *See* Minn. Const., art. VI, §§ 1, 2.

Thus, the threshold question, not raised by the parties in these proceedings, is whether the district court had any authority at all to act after June 30, 2011. In order to determine whether the district court could authorize continued expenditures for agencies of the other branches of government after June 30, the threshold question of the court's authority to act at all, absent an appropriation, after June 30 must first be answered.

2. The concurrence misses the point of my citation to *Marbury.* I do not cite *Marbury* because it calls for us to—in the words of the concurrence—"stand down" while the executive and legislative branches "attempt to resolve a particular issue." To the contrary, the Supreme Court ruled in *Marbury despite* arguments that the dispute before it was "an attempt to intrude into the cabinet, and to intermeddle with the prerogatives of the executive." 5 U.S. (1 Cranch) at 170.

Moreover, the situation here is not delicate, nor is the implication slight or the conjecture vague: the integrity of the judicial branch has been clearly called into question. The issue is not whether the legislative or executive branch has overstepped its constitutional bounds. It is whether *the judicial branch* has overstepped its constitutional bounds, a question that is our solemn obligation to answer.

provisions: by effectively making appropriations (a power reserved to the legislature) in violation of article III, section 1; and by authorizing the payment of funds from the state treasury in the absence of a legislative appropriation in violation of article XI, section 1. *See* Minn. Const. art. III, § 1; Minn. Const. art. XI, § 1.

My concerns do not stop there. Impasses between the two political branches of government are part and parcel of the political process. Impasses between the two political branches of government that result in a request for the judicial branch to intervene, and to decide the very issues on which the other branches of government are at impasse, make the judicial branch part of that political process. Here, at some level, it seems that each of the two political branches, along with their surrogates, is using the judicial branch as a tool to reach their respective political ends. And once the judicial branch is perceived to be part of the political process, we have put at risk the independence of the judiciary [3] that is fundamental to our tripartite system of government. Our silence on the limits of the district court's authority allows others to question whether the judiciary has already become politicized.

Although I share the court's hope that the other branches of government will "put mechanisms in place that would ensure that the district court is not again called upon to authorize expenditures by executive branch agencies in the absence of legislative appropriations," I do not share its optimism. Nor do I mean by my comments to suggest any position on the merits of the petition itself or on the constitutional questions it raises. But even if there is never another budget impasse, the authority of the district court to do what it has done in this and the previous impasses must be addressed. Indeed, the particular answers to those questions are of far less importance than the simple fact that they are answered, so that the judiciary can no longer be used as a pawn in the two political branches' partisan disputes. Our obligation to protect the judicial branch requires it, and the integrity of the judicial branch demands it.[4]

I therefore respectfully dissent.

**3.** As Justice Anthony Kennedy so eloquently put it:

> Judicial independence is not in and of itself sufficient to guarantee freedom or the Rule of Law. Our recent experience informs us, however, that it is a necessary condition.... The law is a promise. It is a promise of neutrality. If the promise is broken, if neutrality does not prevail, then the law, as we know it, the law as we respect it, ceases to exist.... [T]he reason for judicial independence is to preserve neutrality.... [I]f members of the public ... think[ ] that judicial power ... is just a subtle disguise for the exercise of a political function[ ], then they do not believe in judicial independence.

Justice Anthony Kennedy, Speech at the High Court of Hong Kong (Feb. 5, 1999).

**4.** Unlike the legislative branch, which has the power of the purse, and the executive branch, which has the police power, the only power the judicial branch possesses is the trust and confidence of the people it serves. As Justice Kennedy has also said:

> Courts, in our system, elaborate principles of law in the course of resolving disputes. The power and the prerogative of a court to perform this function rest, in the end, upon the respect accorded to its judgments. The citizen's respect for judgments depends in turn upon the issuing court's absolute probity. Judicial integrity is, in consequence, a state interest of the highest order.

*Republican Party of Minnesota v. White*, 536 U.S. 765, 793, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002) (Kennedy, J., concurring).