STATE OF MINNESOTA

IN SUPREME COURT

A11-1852

Court of Appeals                                                      Anderson, J.
                                                                Concurring, Stras, J.
                                                                Dissenting, Page, J.
                                                            Took no part, Wright, J.

State of Minnesota,

                  Respondent,

vs.                                                              Filed:  July 2, 2014
                                                         Office of Appellate Courts

Jaimiah Lamar Irby,

                  Appellant.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant Hennepin
County Attorney, Minneapolis, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Theodora Gaïtas, Assistant State
Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

Minnesota Statutes § 351.02(4) (2012) does not apply to a district court judge

residing in Minnesota but outside her judicial district because a district court judge does

not hold a "local" office as that term is used in the statute.

Affirmed.

1

O P I N I O N

ANDERSON, Justice.

Appellant Jaimiah Lamar Irby argues that he is entitled to a new trial because we found that the judge who presided over his conviction and sentencing, the Honorable Patricia Kerr Karasov, failed to reside in her judicial district from July 1, 2009, to September 30, 2009. Although this period of absence concluded before Irby's trial began, Irby contends that Judge Karasov automatically forfeited her office under Minn. Stat. § 351.02(4) (2012) when she moved outside her district, and that she therefore lacked the authority to hear his case. Because we conclude that a district court judgeship does not fall within the meaning of "local" office in Minn. Stat. § 351.02(4), and, consequently, this portion of the statute does not apply to Judge Karasov, we affirm.

Appellant Jaimiah Lamar Irby was involved in a 4-year relationship with T.D. The couple had two children together before their relationship ended in approximately March 2009. In September 2009, T.D. obtained an order for protection against Irby after an incident in which he became violent and would not let her leave the apartment they had previously shared. Shortly thereafter, Irby, armed with a handgun, confronted T.D., her mother, and her sister at her mother's house. Irby eventually shot both T.D. and her sister. Although T.D. and her sister survived, her sister suffered a punctured lung, and both required multiple surgeries.

2

The State initially charged Irby with first- and second-degree assault against T.D. under Minn. Stat. §§ 609.221, subd. 1, 609.222, subd. 1 (2012); first- and second-degree assault against T.D.'s sister under Minn. Stat. §§ 609.221, subd. 1, 609.222, subd. 1; and first-degree burglary under Minn. Stat. § 609.582, subd. 1(c) (2012). Irby's first trial, in June 2010, ended in a mistrial as a result of a deadlocked jury. Before Irby's second trial, held in June 2011, the State added the charge of a prohibited person in possession of a firearm under Minn. Stat. § 624.713, subds. 1(2), 2(b) (2012). The jury found Irby guilty of all charges and the district court entered judgment of conviction. Irby appealed.

Both of Irby's trials were presided over by Hennepin County District Court Judge Patricia Kerr Karasov. On November 16, 2011, several months after the second of Irby's two jury trials, we issued an opinion in a disciplinary proceeding involving Judge Karasov. *In re Karasov*, 805 N.W.2d 255 (Minn. 2011). We concluded that the Minnesota Board on Judicial Standards had proven by clear and convincing evidence that Judge Karasov had failed to reside within her judicial district from July 1, 2009, to September 30, 2009, in violation of Article VI, Section 4, of the Minnesota Constitution.[1] *In re Karasov*, 805 N.W.2d at 268. For this violation, as well as her failure to cooperate with the Board's investigation, we censured Judge Karasov and suspended her for 6 months without pay. *Id.* at 277.

---

[1] Article VI, Section 4, of the Minnesota Constitution requires, among other provisions, that "[e]ach judge of the district court in any district shall be a resident of that district at the time of his selection and during his continuance in office." Prior to *In re Karasov,* we had not interpreted this constitutional requirement. 805 N.W.2d at 264.

In his appeal, Irby argued, for our purposes here, that Judge Karasov's failure to reside in her district rendered her office vacant under Minn. Stat. § 351.02(4) (providing that every office shall become vacant on "the incumbent's ceasing to be an inhabitant of the state, or, if the office is local, of the district, county or city for which the incumbent was elected or appointed, or within which the duties of the office are required to be discharged"). Under Irby's theory, Karasov automatically ceased to be a judge when she moved out of her district in 2009, and thus, despite moving back to the district before Irby's trial, she had no authority to hear cases absent the Governor appointing her to her former position.

The court of appeals rejected this argument and affirmed Irby's conviction, relying in part on our decision in *In re Karasov*. *State v. Irby*, 820 N.W.2d 30, 35-36 (Minn. App. 2012). The court of appeals reasoned that our "suspension—rather than removal—of the subject judge strongly implie[d], at the very least, that the [supreme] court viewed the subject judge as a de facto judge, if not a de jure judge, notwithstanding her residency violation." *Id.* at 36.

We granted Irby's petition for review on the issue of whether he is entitled to a new trial because Judge Karasov's failure to reside in her district rendered her office vacant under Minn. Stat. § 351.02(4). We reject Irby's argument and affirm the court of appeals, although on different grounds.

I.

A judicial officer's authority to conduct a trial is a legal question that we review de novo. *State v. Pflepsen*, 590 N.W.2d 759, 763 (Minn. 1999) ("Questions concerning

4

the authority and jurisdiction of the lower courts are legal issues subject to de novo review."). Although we generally "limit our review of errors to which the defendant did not object at trial to those constituting plain error affecting substantial rights," and Irby did not object to Judge Karasov presiding at trial, we have said that in cases "involving a fundamental question of judicial authority, . . . plain error analysis is inappropriate." *State v. Harris*, 667 N.W.2d 911, 920 (Minn. 2003). Therefore, we decline to apply plain-error analysis and instead review de novo.

## II.

Minnesota Statutes § 351.02(4) provides, as relevant here:

> Every office shall become vacant on the happening of . . . :
>
> . . . .
>
> (4) the incumbent's ceasing to be an inhabitant of the state, or, *if the office is local*, of the district, county or city for which the incumbent was elected or appointed, or within which the duties of the office are required to be discharged.

(Emphasis added.) When we concluded that she had failed to reside in her district during the summer of 2009, we also noted that "Judge Karasov was residing at her lake home in Chisago City . . . during this period." *In re Karasov*, 805 N.W.2d at 265. Because Judge Karasov continued to reside in Minnesota during the time in question, she clearly did not "ceas[e] to be an inhabitant of the state." Minn. Stat. § 351.02(4). Judge Karasov's office, therefore, did not become vacant under the first portion of the statute.

Since the first portion of Minn. Stat. § 351.02(4) does not apply, Irby's argument must rely on the second half of that paragraph—that Judge Karasov was no longer an

5

inhabitant of the "district . . . for which [she] was elected or appointed, or within which the duties of [her] office are required to be discharged." But this language is preceded by a qualifier: it applies only "if the office is local." *Id.* For Irby's claim to succeed, a district court judgeship must therefore be a "local" office under the statute. Whether a district court judgeship qualifies as a "local" office under Minn. Stat. § 351.02(4) is a question of first impression for our court, and as a matter of statutory interpretation, it is one that we review de novo. *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 758 (Minn. 2010).

We begin with the text of the statute.[2] "The goal of statutory interpretation is to 'ascertain and effectuate the intention of the legislature.'" *W. Nat'l Ins. Co. v. Thompson*, 797 N.W.2d 201, 205 (Minn. 2011) (citation omitted); *see also* Minn. Stat. § 645.16 (2012). When interpreting a statute, we give words and phrases their plain and ordinary meaning. *Martin v. Dicklich*, 823 N.W.2d 336, 342 (Minn. 2012). If the statute is not ambiguous, we apply its plain meaning. *Id.* A statute is ambiguous if its language is subject to more than one reasonable interpretation. *Id.* In this case, Minn. Stat. § 351.02(4) is ambiguous because it is subject to more than one reasonable interpretation.

---

[2]    Unlike the dissent, we conclude that Article VI, Section 4, of the Minnesota Constitution, is not the appropriate vehicle for analyzing Irby's claim. Although Article VI, Section 4, states that a district court judge shall be a resident of the district in which the judgeship is held during continuance in office, it does not provide any guidance as to the consequences for failing to maintain residency. We have not previously interpreted Article VI, Section 4, as requiring forfeiture of a judgeship, let alone held that such forfeiture occurs automatically at the time of the violation. Instead, we have held that less severe sanctions can remedy a violation of Article VI, Section 4, including in our discipline of Judge Karasov, in which we declined to remove her from office for her failure to maintain residency in her district. *In re Karasov*, 805 N.W.2d at 275-76.

6

One reasonable interpretation of Minn. Stat. § 351.02(4) recognizes that district court judges act with statewide authority and therefore do not hold a "local" office within the meaning of section 351.02(4). The phrase "if the office is local" itself is not so plain and unambiguous as to allow for only one interpretation. *Cf. Oehler v. City of St. Paul*, 174 Minn. 410, 418, 219 N.W. 760, 763 (1928) ("The words 'office' and 'officer' are terms of vague and variable import, the meaning of which necessarily varies with the connection in which they are used . . . ."). But interpreting the phrase within the context of the entire statute, as we must, *see ILHC of Eagan, LLC v. Cnty. of Dakota*, 693 N.W.2d 412, 419 (Minn. 2005), provides some clarification. While the first part of Minn. Stat. § 351.02(4) refers to the incumbent ceasing to reside in the state, the "local" portion of the statute references ceasing to reside in a particular "district, county or city." Thus, the language of the statute reasonably supports the construction that statewide offices are only impacted by the first part of the statute, and that a "local" office refers to an office operating beneath the statewide level, such as at the district, county, or city level.

There is constitutional and statutory support for the proposition that a district court judgeship is a statewide office, and therefore not a "local" office. The judicial power of the state is exercised through its courts, including the "district court." Minn. Const. art. VI, § 1. We have said that the district court is "a constitutional court of original jurisdiction," and we have recognized the district court for over 100 years as "the one court of general jurisdiction" in the state. *In re Civil Commitment of Giem*, 742 N.W.2d 422, 429 (Minn. 2007) (citation omitted) (internal quotation marks omitted). As a court of general jurisdiction, the district court provides the entry point into a statewide system.

7

Although assigned to, appointed to, or elected from a particular judicial district, a district court judge can "serve and discharge the duties of judge of any court in a judicial district not that judge's own" when "public convenience and necessity require it." Minn. Stat. § 2.724, subd. 1 (2012). District court judges interpret and apply state law, and they issue orders that have binding effect statewide. District court judges are "state employees," Minn. Stat. § 480.181, subd. 1 (2012), and when a vacancy occurs, new judges are appointed by the state's chief executive officer—the Governor. Minn. Const. art. VI, § 8 ("Whenever there is a vacancy in the office of judge the governor shall appoint in the manner provided by law a qualified person to fill the vacancy until a successor is elected and qualified."). Thus, it is reasonable to conclude that district courts are the courts of the state itself, not individual "local" offices.[3]

This interpretation, which acknowledges the statewide role held by the district courts and the state-level status conferred on district court judges, is also consistent with the statewide status held by similar constitutional office holders. Although the dissent argues that district court judges hold a local office because they are elected within a particular place and serve the constituents of that area, the dissent fails to explain why

---

[3] While Minnesota once had many courts of limited jurisdiction that might more logically have fallen within the definition of "local" offices under Minn. Stat. § 351.02(4), "the probate, municipal and county courts of the state ha[ve now] been consolidated into district courts of general jurisdiction." *In re Estate of Janecek*, 610 N.W.2d 638, 641 (Minn. 2000). *See also* Maynard E. Pirsig, *The Proposed Amendment of the Judiciary Article of the Minnesota Constitution*, 40 Minn. L. Rev. 815, 828 (1956) (explaining that local courts have "been almost wholly the municipal courts of the state" as well as justices of the peace and probate court judges who "function[ed] largely on a part time basis and [were] compensated on a fee basis").

district court judges should be distinguished from other similarly-situated constitutional office holders that we have clearly designated as holding state offices. For example, we have held that a seat in the Legislature is a "state office," even if the legislator gained office through a county election. *Lundquist v. Leonard*, 652 N.W.2d 33, 35-36 (Minn. 2002) (noting, in deciding question of jurisdiction over an election contest, that "an election for a legislative office in a district situated entirely within a single county may be characterized as a county election, [but] a legislative office is undoubtedly a state office" (internal quotation marks omitted)). Similarly, we have recognized that judges who sit on the court of appeals, including those appointed or elected from a particular congressional district, "serve the entire state; their responsibility is to apply the law even-handedly, rather than representing their supporters or their congressional district 'constituents.' " *Clayton v. Kiffmeyer*, 688 N.W.2d 117, 131 (Minn. 2004). Thus, we conclude that, although judges are appointed or elected to serve a particular district, it is reasonable to view a district court judgeship as a statewide office because of the nature of the office.

Other statutory references also suggest that the Legislature has not viewed district court judges as local office holders. In some election-related contexts, the Legislature has distinguished between "judicial" and "local" offices. *See* Minn. Stat. § 211B.01, subd. 3 (2012) (defining "candidate" as "an individual who seeks nomination or election to a federal, statewide, legislative, judicial, *or* local office," where "local office" includes "special districts, school districts, towns, home rule charter and statutory cities, and counties" (emphasis added)); *see also* Minn. Stat. § 10A.01, subd. 22 (2012) (defining

9

"local official" as a person who holds office in a political subdivision that controls expenditure or investment of public money). In addition, when the Legislature intends that a statute apply to district court judges, it usually says so. *See, e.g.*, Minn. Stat. § 10A.01, subd. 10 (2012) (" 'Candidate' means an individual who seeks nomination or election as a state constitutional officer, legislator, or *judge*." (Emphasis added)); *cf. Peterson v. Stafford*, 490 N.W.2d 418, 420 (Minn. 1992) (explaining historical background for the "recognized goal of distinguishing judicial elections from elections for other offices").

But reading "local" office to exclude district court judges is not the only reasonable interpretation of the disputed statute. Irby argues for an interpretation of Minn. Stat. § 351.02(4) that includes a district court judge within the scope of "local" office. Irby contends that the language of this statute is expansive because it begins with a reference to "every office," refers to elected and appointed officials, and does not expressly exclude district court judges. This interpretation focuses on the fact that a "district" is a subdivision of the state, reasoning that because Judge Karasov discharged her duties within the Fourth Judicial District and was elected to serve a particular "district, county or city," her judgeship was a local office. Under this interpretation and assuming the statute is self-executing, Judge Karasov's office automatically became vacant when she moved outside her district. Because Judge Karasov was not subsequently appointed to fill this vacancy, Irby argues, Judge Karasov was not a judge at the time of Irby's trial and had no authority to hear his case.

10

Irby's proposed construction, although not unreasonable on its face, necessarily implies that the Legislature has supremacy over judicial discipline through a self-executing statute. This proposed construction creates significant constitutional tension. Construing "local" office to apply to district court judges, and therefore allowing for the automatic removal of a district court judge, raises constitutional issues regarding which branch of government—the legislative or judicial—has the final authority to remove and discipline judges. We have previously recognized the judiciary's authority to discipline judges based on its inherent judicial power. *See In re Kirby*, 350 N.W.2d 344, 347 (Minn. 1984) (explaining that the judicial branch "has always had an existing inherent power to discipline judges"); *In Re Clerk of Lyon Cnty. Courts' Comp.*, 308 Minn. 172, 176, 241 N.W.2d 781, 784 (1976) (noting that inherent judicial power "governs that which is essential" to the existence of the judiciary as a functioning court and rests its authority in "the constitutional doctrine of separation of powers").

While Minn. Const. art. VI, § 9, also gives the Legislature power to discipline judges, stating that "[t]he legislature may also provide for the retirement, removal or other discipline of any judge who is disabled, incompetent or guilty of conduct prejudicial to the administration of justice," our case law suggests that the Legislature's ability to discipline judges is limited to the impeachment process. *Sylvestre v. State*, 298 Minn. 142, 147, 214 N.W.2d 658, 662 (1973) ("The legislature may not abolish the position [of judge of the district court] nor, under the present statutes, remove a judge

11

from office except by impeachment.").[4] Therefore, concluding, as the dissent would have us do, that the Legislature can remove district court judges through self-executing statutes would recognize a legislative power over the judiciary that is far greater than what we have previously recognized. Construing the Legislature's authority over the judiciary this broadly would also potentially conflict with Article III, Section 1, of the Minnesota Constitution, which states, "The powers of government shall be divided into three distinct departments: legislative, executive and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution."

Thus, Irby's proposed construction of section 351.02(4) presents a potential constitutional conflict over the respective roles of the legislative and judicial branches regarding judicial discipline authority that, in the end, we conclude is unnecessary to resolve. We have held that "if we can construe a statute to avoid a constitutional confrontation, we are to do so." *In re Civil Commitment of Giem*, 742 N.W.2d at 429. This includes construing statutes, wherever possible, to avoid potential separation of powers problems. *See id.* The canon of constitutional avoidance can be applied where, as here, the statutory language is ambiguous. *Clark v. Martinez*, 543 U.S. 371, 385 (2005) ("The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than

---

[4] We note that the statute at issue here, Minn. Stat. § 351.02(4), was in effect and contained substantially similar language to the modern provision at the time *Sylvestre* was decided. *See* Minn. Stat. § 351.02(4) (1971); 298 Minn. at 142, 214 N.W.2d at 658.

12

one construction; and the canon functions as *a means* of *choosing between them*.").  The

constitutional-avoidance canon is also appropriately applied here given the lack of a clear

statement of legislative intent regarding the intended scope of "local" office.  *See In re*

*Civil Commitment of Giem*, 742 N.W.2d at 430 (applying the constitutional avoidance

canon "because the legislature gave no clear indication [in the statute] that it intended to

divest the district court of subject matter jurisdiction").  Therefore, we conclude that it is

appropriate to utilize the canon of constitutional avoidance in this situation, which leads

to the conclusion that district court judgeships are outside the definition of "local" office

for purposes of Minn. Stat. § 351.02(4).[5]

---

[5]     The dissent argues that our use of the constitutional avoidance canon is inappropriate because Minn. Stat. § 351.02(4), if it is self-executing, also potentially creates a separation of powers problem as applied to district court judges who move out of state.  But it is a needless limitation, and one that we have not previously adopted, to require that our avoidance of the constitutional issue today ensures that a similar issue, based on entirely different facts, will never arise again.  *Cf. In re Senty-Haugen*, 583 N.W.2d 266, 269-70 n.3 (Minn. 1998) (noting that "[i]t is well-settled law that courts should not reach constitutional issues if matters can be resolved otherwise" and refusing to decide a constitutional issue because it had not been properly raised).  The constitutional avoidance canon requires that we avoid constitutional confrontations "if it is possible to do so."  *State v. Gaiovnik*, 794 N.W.2d 643, 648 (Minn. 2011).  Thus, we will not address the underlying issues of whether Minn. Stat. § 351.02(4) is self-executing and, if it is, how to resolve the potential separation of powers problem until we are presented with a case where avoidance of the constitutional question is not possible.  This is not such a case, and to decide whether the statute is self-executing and, if it is, resolve the potential separation of powers problem today based only on a hypothetical set of facts is contrary to our previous statements that we will not indulge in advisory opinions.  *See State v. N. Star Research & Dev. Inst.*, 294 Minn. 56, 81, 200 N.W.2d 410, 425 (1972) ("This court does not decide important constitutional questions unless it is necessary to do so in order to dispose of the case.  To express any views on the [constitutional] issue would be to indulge in an advisory opinion."); *see also Liverpool, N.Y. & Phila. S.S. Co. v. Emigration Comm'rs*, 113 U.S. 33, 39 (1885) (instructing courts to never "anticipate a question of constitutional law in advance of the necessity of

(Footnote continued on next page.)

13

III.

Based on the facts of this case, the statutes enacted by the Legislature, and our canons of construction, we conclude that a district court judgeship is not a "local" office under Minn. Stat. § 351.02(4).[6]   Judge Karasov, therefore, was not automatically removed from her position by application of this statute when she failed to reside in her district.   She had the necessary authority to conduct Irby's trial, and so we affirm the court of appeals, although on different grounds.

Affirmed.

WRIGHT, J., took no part in the consideration or decision of this case.

---

(Footnote continued from previous page.)
deciding it"); *Limmer v. Swanson*, 806 N.W.2d 838, 839 (Minn. 2011) (refusing to issue "an advisory opinion adjudicating separation of powers issues that are not currently active and may not arise in the future").

[6]   Because we conclude that district court judgeships are not local offices under Minn. Stat. § 351.02(4), we do not need to decide here whether the statute is self-executing as Irby has argued nor whether the de facto officer doctrine would otherwise apply.   Although the dissent criticizes the State's arguments that the statute is not self-executing, the issue of whether Minn. Stat. § 351.02(4) is self-executing is not necessary to the resolution of this case and we do not need to engage in this debate.   Our holding today is narrow; we leave those broader questions for another dispute and another day.

CONCURRENCE

STRAS, Justice (concurring).

I agree with the court that the better interpretation of Minn. Stat. § 351.02(4) (2012) is that the office of district judge is not a "local" office. *See State v. Hayes*, 826 N.W.2d 799, 805 (Minn. 2013) (accepting the more reasonable of two interpretations of a statute); *In re Estate of Butler*, 803 N.W.2d 393, 397 (Minn. 2011) (adopting the "better" interpretation of a statute). I write separately, however, to express my doubt about the suggestion in the court's opinion that the court's authority in the realm of judicial discipline is exclusive. While it may be true that the grant of "judicial power" in Article VI, Section 1, of the Minnesota Constitution encompasses the authority to discipline judges—a question not before us today—there is no doubt that the grant of authority to the Legislature in Article VI, Section 9, would render our authority to discipline judges concurrent rather than exclusive. *See* Minn. Const. art VI, § 9 ("The legislature may also provide for the retirement, removal or other discipline of any judge who is disabled, incompetent or guilty of conduct prejudicial to the administration of justice."). Accordingly, I would not rely on the constitutional-avoidance canon to construe Minn. Stat. § 351.02(4) because there is no serious constitutional question lurking in this case.[1] For that reason, I concur only in the judgment of the court.

---

[1]    Indeed, it is not even clear that section 351.02(4) is a disciplinary statute, which casts further doubt on the court's reliance on constitutional avoidance. After all, the statute simply provides a mechanism for determining whether, and when, an office becomes vacant. It does not purport to impose any discipline on the officeholder, such as a loss of salary, for the failure to comply with the requirements of the statute.

D I S S E N T

PAGE, Justice (dissenting).

I respectfully dissent.

One of the core constitutional requirements for serving as a district court judge in Minnesota is that the judge must reside in her district during her continuance in office.[1] Article VI, Section 4, of the Minnesota Constitution, states in no uncertain terms: "Each judge of the district court in any district *shall be a resident of that district* at the time of [her] selection and during [her] continuance in office." (Emphasis added.) In *In re Karasov*, we determined that Judge Karasov did not reside in her judicial district from July 1, 2009, to September 30, 2009. 805 N.W.2d 255, 268 (Minn. 2011). When Judge Karasov abandoned her residence within the Fourth Judicial District on July 1, 2009, she no longer met one of the two essential qualifications for holding office—the constitution's residence requirement—and could not continue in office. It is because she no longer met the constitutional requirements for holding the office of district court judge in the Fourth Judicial District, and not for reasons of judicial discipline, that on July 1, 2009, Judge Karasov forfeited her judicial office. Having forfeited her office, Judge Karasov was without authority to preside at the trial of appellant Jaimiah Lamar Irby.

---

[1]     There are, in fact, only two constitutional requirements for the office of district court judge: (1) a district court judge "shall be learned in the law," Minn. Const. art. VI, § 5; *see also In re Daly*, 294 Minn. 351, 357-58, 200 N.W.2d 913, 917-18 (1972) (to be "learned in the law" a person must be either admitted, or entitled to admission, to practice as an attorney at law in this state); and (2) must "be a resident of [her] district at the time of [her] selection and during [her] continuance in office," Minn. Const. art. VI, § 4.

Because of this want of authority, I conclude that Irby's convictions must be reversed and that his case be remanded for trial.

## I.

While my analysis under Article VI, Section 4, resolves the question of whether Judge Karasov had the authority to preside at Irby's trial, I would reach the same result applying Minn. Stat. § 351.02 (2012). First, unlike the court, I do not question the Legislature's authority to provide for the removal or other discipline of judges. This authority is set out clearly in our constitution:

> The legislature may also provide for the retirement, removal or other discipline of any judge who is disabled, incompetent or *guilty of conduct prejudicial to the administration of justice*.

Minn. Const. art. VI, § 9 (emphasis added).

It is undisputed that Judge Karasov violated the constitutional requirement that she reside in her district when she moved from her home in the Fourth Judicial District and, from July 1 through September 30, 2009, resided in Chisago City, which is in the Tenth Judicial District. *See In re Karasov*, 805 N.W.2d at 265, 268. We concluded in *In re Karasov* that by failing to reside in her district Judge Karasov violated Rule 1.1 of the Code of Judicial Conduct, which provides that "[a] judge shall comply with the law, including the Code of Judicial Conduct." 805 N.W.2d at 268. We also determined that Judge Karasov's conduct violated Rule 1.2 of the code, which states that "[a] judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the

appearance of impropriety."[2] *See In re Karasov*, 805 N.W.2d at 268.  It seems clear to me that such misconduct—which also, of course, directly violates the constitution's residence requirement—was prejudicial to the administration of justice.  Given the plain language of Article VI, Section 9, the court's concern about legislative encroachment on our power to determine judicial discipline is misguided.  In view of the constitution's express grant of authority to the Legislature, there simply is no separation of powers question presented here.  Thus, the only question is whether Minn. Stat. § 351.02(4) applies to the office of district court judge.  I conclude that it does.

Minnesota Statutes § 351.02 provides, in pertinent part:

Every office shall become vacant on the happening of either of the following events, before the expiration of the term of such office:

. . . .

(4) the incumbent's ceasing to be an inhabitant of the state, or, if the office is local, of the district, county or city for which the incumbent was elected or appointed, or within which the duties of the office are required to be discharged.

Section 351.02 states that an office "shall become vacant" upon the happening of any one of several enumerated events, one of which is the officer's "ceasing to be an inhabitant" of the district for which she was elected or appointed.  The statute's plain language indicates that it is the change of residence itself that causes a vacancy as a

---

[2]    I place no significance on the absence from our decision in *In re Karasov* of any discussion of the ramifications of the constitutional violation or of section 351.02 for the simple reason that neither of the parties raised those ramifications or that statute and we, as a court, failed to recognize them on our own.

matter of law. In this respect, the statute itself is the mechanism by which the underlying constitutional requirement of residency is given effect.[3]

As the court implicitly acknowledges, section 351.02's expansive reference to "every office" must be construed to encompass the office of district court judge. *See State ex. rel. Smallwood v. Windom*, 131 Minn. 401, 407-08, 155 N.W. 629, 632 (1915) (applying predecessor statutes, Minn. Rev. Laws § 2667 (1905) and Minn. Gen. Stat. § 5723 (1913), to municipal judgeship). The court holds, however, that because a district court judgeship is not a "local" office, Judge Karasov's conduct falls within the scope of section 351.02 only if she "ceas[ed] to be an inhabitant of the state." Because she continued to reside within Minnesota at all times, the court concludes, section 351.02(4) has no application here.

In reaching its conclusion that section 351.02 does not apply in this case, the court either misreads or ignores the plain meaning of the words "local" and "district," in violation of our canons of construction. "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2012). When the words of a law are clear and free from all ambiguity, we may not disregard the letter of the law in pursuit of what we perceive to be its spirit. *Id.* When construing a statute, "words and phrases are construed according to rules of

---

[3] As Irby notes in his brief, this construction of the statute is consistent with the Attorney General's interpretation of section 351.02. *See, e.g.*, Op. Att'y Gen. No. 705-a-8 (Feb. 2, 1948) (soil conservation officer vacated his office when he moved to a village that was not within his district); Op. Att'y Gen. No. 84, at 150 (Aug. 17, 1949) (statute provided for "automatic vacancy" when commissioner of the Albert Lea Housing and Redevelopment Authority ceased to reside in Albert Lea).

grammar and according to their common and approved usage." Minn. Stat. § 645.08(1) (2012). *The American Heritage Dictionary of the English Language* defines the word "local" as: "a. Of, relating to, or characteristic of a particular place . . . ; b. Of or relating to a city, town, or district rather than a larger area: *state and local government.*" *The American Heritage Dictionary of the English Language* 1029 (5th ed. 2011). "District" is defined most commonly as "[a] division of an area, as for administrative purposes." *Id.* at 525. It is true that a district court judge is a state officer "in certain senses of the term." *See Brown v. Smallwood*, 130 Minn. 492, 493-94, 153 N.W. 953, 954 (1915) ("It is conceded that the municipal judge is a state officer in certain senses of the term."). Indeed, Article VI, Section 3, provides the district court with statewide jurisdiction over all civil and criminal cases. Moreover, district court judges serve within the judicial branch of state government. But none of that makes the office of judge of the Fourth Judicial District a statewide office.

By requiring that those who serve as district court judges be appointed to, or elected by the citizens of, a specific district and then live within "that" district rather than some other or larger area, our constitution's framers clearly intended that judges reside in a particular place constituting a division of the state or geographic unit marked out by law within the state. Although not determinative, I would note that individual counties are required to furnish facilities for the district courts. Minn. Stat. § 484.77 (2012). I would also note that, although the district courts collectively exercise statewide jurisdiction, an individual district court judge may serve as a judge in a judicial district other than her

own only when expressly authorized to do so by the Chief Justice. Minn. Stat. § 2.724, subd. 1 (2012).

What *is* determinative is that those who hold the office of district court judge are elected from a particular place set out by law "by the voters from the area which they are to serve," Minn. Const. art. VI, § 7; and those elections are local and of no particular concern to the rest of the state. For those appointed to the office of district court judge, the appointment must be to a particular area or place. Minn. Const. art. VI, § 4. And whether elected or appointed, our constitution mandates that judges reside within that particular area or place during their continuation in office. *Id.*

The court rejects this analysis, reasoning that state legislators are also elected from specific districts—in their case house or senate districts—but are considered state office holders. *See* Minn. Const. art. IV, § 6; *Lundquist v. Leonard*, 652 N.W.2d 33, 36 (Minn. 2002). However, state legislators are elected to a state body—the Minnesota Legislature. *See* Minn. Const. art. IV. District court judges are elected to serve a specific district court and may only serve outside that district as noted above. *See* Minn. Const. art. VI, § 7; Minn. Stat. § 2.724, subd. 1.[4]

---

[4]     Minnesota Statutes § 209.02, subd. 1 (2012), which governs election contests, also supports my interpretation of section 351.02. Section 209.02, subdivision 1, allows a voter to contest an election or nomination of a person "declared nominated or elected to . . . a *statewide*, county, legislative, municipal, school, or *district court* office." (Emphasis added.) If the Legislature considered a district court office to be a statewide office, it would not separately identify these two terms in section 209.02. *See Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn. 1999). Accordingly, section 209.02 demonstrates the Legislature's intent to exclude district court offices from its definition of "statewide office." *State v. Lucas*, 589 N.W.2d 91, 94 (Minn. 1999) ("The doctrine of

(Footnote continued on next page.)

The State contends that interpreting section 351.02(4) to include district court judges results in the automatic forfeiture of judicial office when the judge moves outside of her district. The State argues that such a "self-executing" statute would be inconsistent with the Legislature's system for disciplining judges, which requires the Board on Judicial Standards to make disciplinary recommendations to this court. *See* Minn. Stat. §§ 490A.01-.03 (2012). The State maintains that, "[s]hort of legislative impeachment, the only way to remove a judge from office is by order of this Court." Finally, the State observes that Minn. Stat. § 2.722, subd. 4(a) (2012), requires us to certify a vacancy to the Governor before the Governor can fill the vacancy. Based on this observation, the State argues that a judicial office cannot be forfeited until our court declares it vacant.

The State is wrong on all counts. First, the State's contention that section 351.02 is "self-executing" is only true in the narrowest sense of the term. Our court has the ultimate authority to determine whether a judge resided outside of her district and, if so, when that change of residence occurred. *Cf.* Rule 14(e), Rules of the Board on Judicial Standards (describing our review of the hearing panel's recommendation of discipline). Therefore, removing a judge from office still requires a decision from this court.

Second, this case illustrates that giving effect to section 351.02 does not circumvent the Legislature's system for disciplining and removing judges. Consistent with the statutory regime, the Board on Judicial Standards filed a formal complaint

---

(Footnote continued from previous page.)
*in pari materia* is a tool of statutory interpretation that allows two statutes with common purposes and subject matter to be construed together to determine the meaning of ambiguous statutory language.").

against Judge Karasov for living outside of her district, and a three-member panel held a hearing on the complaint and made a recommendation to this court. *In re Karasov*, 805 N.W.2d 255, 258-59, 263 (Minn. 2011). This process conformed with the statutory regime the Legislature envisioned. *See* Minn. Stat. §§ 490A.01-.03.

I also note that the "self-executing" nature of section 351.02 is irrelevant to the correct construction of the plain language in subsection (4). The decision that a vacancy has arisen will always have a retroactive effect and in this sense the statute is "self-executing." But that result does not alter the constitutional and statutory requirements for a district court judge to be elected or appointed from a particular district and thereafter to reside in that district continuously.

The State's final observation, that section 2.722, subdivision 4, requires us to certify a vacancy before the Governor can fill the vacancy, is irrelevant. Section 2.722 addresses what occurs after a vacancy arises, that is, how the vacancy is to be filled, if it is to be filled at all. Section 2.722 does not purport to address *how* vacancies are created in the first instance. Nor does it address how, when, or why, a district court judge is removed from office.

That section 351.02 may complicate the system for determining judicial vacancies does not deprive that section of its validity or mean that it does not comport with our system for filling vacancies. As discussed, how the office of district court judge becomes vacant is not determinative of how the vacancy is filled.

The court makes a similar argument to that of the State, although relying more on constitutional considerations. The court contends that including district court judges

within the definition of "local office" as I do "implies that the Legislature has supremacy over judicial discipline through a self-executing statute." On this basis the court invokes the constitutional-avoidance canon, *see In re Civil Commitment of Giem*, 742 N.W.2d 422, 429 (Minn. 2007), to conclude that district court judges occupy a statewide office.

For the sake of argument, if it is assumed that the court is correct that my interpretation implies legislative supremacy over judicial discipline, that concern would seem to be present regardless of whether the office of district court judge is a statewide or local office. The court agrees, at least implicitly, that section 351.01(4) would apply if Judge Karasov had not merely moved out of her district but had moved her residence across Minnesota's border to one of our neighboring states, in which case her office would have "become vacant." Under the court's reasoning, the statute would still be self-executing, thereby implying the Legislature's supremacy over judicial discipline. Therefore, the constitutional concern is present even under the court's interpretation of "local office." The court could avoid this game of judicial whack-a-mole by recognizing our role in determining whether a vacancy has arisen.

For these reasons, I conclude that Minn. Stat. § 351.02(4) applies to this case because, even though district court judges are employed within a statewide system and have statewide power, the office of district court judge is a local office. Based on that conclusion, I also conclude that when Judge Karasov ceased being a resident of the Fourth Judicial District on July 1, 2009, her office became vacant.

## II.

Because I conclude that under the Minnesota Constitution and Minn. Stat. § 351.02, Judge Karasov did not have the authority to preside over Irby's trial, it is necessary to consider whether Judge Karasov's actions may be given effect under the de facto judge doctrine. I conclude that Judge Karasov's acts cannot be retroactively ratified under the de facto judge doctrine. "A de facto judge is a judge operating under color of law but whose authority is procedurally defective." *State v. Harris,* 667 N.W.2d 911, 920 n.5 (Minn. 2003) (citation omitted) (internal quotation marks omitted). "The acts of a de facto judge, actually occupying the office and transacting business, are valid." *Windom,* 131 Minn. at 420-21, 155 N.W. at 637 (applying de facto judge doctrine "[t]o avoid useless controversy or litigation"); *see Carli v. Rhener,* 27 Minn. 292, 293, 7 N.W. 139, 139 (1880) ("The acts of [a de facto] officer are valid as respects the public and persons interested therein, and as to them cannot be questioned."). But the de facto judge doctrine does not apply to "case[s] where the defect in the underlying statute 'is not merely technical but embodies a strong policy concerning the proper administration of judicial business.' " *Harris,* 667 N.W.2d at 920 n.5 (quoting *Glidden Co. v. Zdanok*, 370 U.S. 530, 535-36 (1962) (plurality opinion)).

The defect in Judge Karasov's authority was not "merely technical"; it was of constitutional magnitude. As I noted at the outset, the Minnesota Constitution establishes only two requirements for qualification to serve as a district court judge: (1) residence within the district in which the judge serves; and (2) that the judge be "learned in the law." Plainly, the fact that the residence requirement is a constitutional requirement for

service as a district court judge is a reflection of Minnesota's commitment to a "strong policy" that its district court judges be members of the communities in which they serve. Judge Karasov's conduct violated this policy and, as a consequence, she was not a de facto judge.

III.

Having concluded that Judge Karasov vacated her judicial office as a matter of law, the only suitable remedy is to reverse Irby's convictions. "Ordinarily we limit our review of errors to which the defendant did not object at trial to those constituting plain error affecting substantial rights," but we have recognized that plain-error analysis is inappropriate "[i]n a case involving a fundamental question of judicial authority." *Harris*, 667 N.W.2d at 920. Accordingly, Irby is entitled to a trial before a duly-authorized district court judge.