*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1175**

Bjorklund Companies, LLC,
Appellant,

vs.

Auto-Owners Insurance,
Respondent.

**Filed January 26, 2015
Affirmed
Chutich, Judge**

Isanti County District Court
File No. 30-CV-12-771

Courtland Borle, Borle Law Office, PA, North Oaks, Minnesota (for appellant)

Timothy P. Tobin, Brock P. Alton, Gislason & Hunter, LLP, Minneapolis, Minnesota (for respondent)

Considered and decided by Reilly, Presiding Judge; Stauber, Judge; and Chutich, Judge.

## UNPUBLISHED OPINION

**CHUTICH**, Judge

Appellant Bjorklund Companies, LLC appeals the district court's decision to affirm an appraisal award and grant summary judgment in favor of its insurer, Auto-Owners. Bjorklund claims that Auto-Owners waived its right to an appraisal under the

plain language of Minnesota Statutes section 65A.12, subdivision 1 (2014) and that the appraisal panel substantially prejudiced its rights by failing to consider material evidence in its appraisal award. Because Bjorklund did not elect to waive Auto-Owners's appraisal right under this section and did not present sufficient evidence to show that the appraisers conducted the appraisal hearing in a way that substantially prejudiced his rights, we affirm.

## FACTS

Appellant Bjorklund Companies, LLC contracted with respondent Auto-Owners Insurance Company for an insurance policy that covered any "direct physical loss of or damage to" Bjorklund's two commercial buildings located in Isanti. In the summer of 2011, two storms with high winds blew through Isanti. Shortly after the last storm, Bjorklund's contractor, Sherco Construction, Inc., inspected Bjorklund's property to determine the extent of the damage. Sherco's report estimated that the storms caused $636,289.92 in damage to the two metal pole buildings on the property, known as the east and west buildings.

Northland Consulting Engineers, LLP, engineers for Auto-Owners, also inspected Bjorklund's property twice after the storms and composed two reports. In its two reports, Northland concluded that the storms caused some of the damage to the roof of the east building, but a majority of the damage to Bjorklund's east and west buildings predated the storms.

In November 2011, Auto-Owners sent Bjorklund a Coverage Position Letter, concluding that the damage to the east and west buildings was not caused by the storms

2

and therefore was excluded from Bjorklund's original claim. Auto-Owners did not deny that the roof of the east building was damaged in the storms and agreed to reimburse Bjorklund for those damages.

In December 2011, the owner of Bjorklund, Craig Bjorklund, sent a letter to Auto-Owners stating his desire for an appraisal: "I feel the adjuster assigned to my claim has not adequately represented my claim. I want to take this to appraisal and would like someone to call me to inform me of how to pursue this action and/or send me the appropriate paperwork." Auto-Owners responded, stating that, "items originally claimed [] are excluded under your policy, [and] those items cannot be considered for appraisal."[1] The letter also stated that if Bjorklund wished to pursue appraisal for the damage from the storms, it must send Auto-Owners the contact information for Bjorklund's appraiser. At that point, neither party moved forward with the appraisal process.

In March 2012, Auto-Owners sent Bjorklund a check in the amount of $15,328.78 for the damage to the roof of the east building. In October 2012, Bjorklund filed a complaint against Auto-Owners, claiming that Auto-Owners breached the terms of its insurance policy with Bjorklund "by declining to pay for the damage to the [east and west buildings] caused by the Storms and by declining to enter in to the appraisal process." Bjorklund requested that the district court compel Auto-Owners to participate in the

---

[1] Auto-Owners's position on the coverage issue has subsequently changed after the supreme court's decision in *Quade v. Secura Insurance*, 814 N.W.2d 703 (Minn. 2012). According to Auto-Owners, *Quade* altered the appraisal landscape by allowing the appraisal panel to determine the cause of a loss while determining the amount of loss.

3

appraisal process or, in the alternative, determine at trial the amount of Bjorklund's unpaid damages.

In April 2013, Auto-Owners moved to compel an appraisal and either dismiss the action or stay it pending appraisal. Bjorklund then moved to amend its complaint and to compel Auto-Owners to comply with discovery requests. The district court granted Auto-Owners's motion to compel appraisal and granted Bjorklund's motion to compel discovery but stayed that motion pending the completion of the appraisal. The district court also denied Bjorklund's motion to amend the complaint and its motion for attorney fees.

The appraisal hearing was held in October 2013. Under Bjorklund's policy, Auto-Owners appointed an appraiser, and Bjorklund appointed an appraiser. The appraisers then appointed a neutral umpire to act as the third appraiser. The two appraisers and the umpire considered the damage reports that Sherco and Northland had prepared. According to the affidavits of the umpire and Auto-Owners's appraiser, the panel fully considered Bjorklund's claimed losses and determined that a vast majority of them were without basis. In his affidavit, Auto-Owners's appraiser specifically stated that the panel reviewed the interior and exterior of both the east and west buildings but determined that Bjorklund's claimed damages were meritless.

In his affidavit, Bjorklund's appraiser stated that the panel unanimously agreed that Bjorklund was entitled to replace the east building roof. He also stated that the panel outvoted him on whether to provide an appraisal value for all Bjorklund's claimed losses

4

because Auto-Owners's appraiser and the umpire did not believe that the storms caused them.

Bjorklund's contractor and the owner of Sherco, T.C., led the appraisal panel on a tour of Bjorklund's property to explain how the storms damaged the east and west buildings. In his affidavit, T.C. stated that the tour lasted approximately ten minutes, although T.C. left before the appraisers. T.C. also stated that "the appraisal panel did not include in their appraisal all of the damage which [Bjorklund] included in its insurance claim," and during his tour, the appraisal panel only climbed up onto the roof of the east building to evaluate the damage.

Craig Bjorklund was also at the appraisal and stated in his affidavit that the appraisers were only on his property to inspect damages for half an hour. He further stated that the appraisal panel only allowed him to give a brief overview of the storm but did not ask him questions or allow him to provide any of his documentation. He specifically wanted to testify that the roofs had not leaked before the storms, that the buildings had no racking or buckling before the storms, and explain the costs he incurred in mitigating the damages after the storms.

The appraisal panel ultimately awarded Bjorklund $10,016.50, in addition to the $15,328.78 that Auto-Owners had paid on March 2, to compensate Bjorklund for the damage to the east building roof. Auto-Owners moved for a confirmation of the appraisal award, summary judgment, dismissal of Bjorklund's claims, and a protective order to prevent Bjorklund from deposing one of its employees. Bjorklund then moved to set a trial date, compel discovery, and vacate the appraisal award.

In May 2014, the district court confirmed the appraisal award and granted Auto-Owners's motion for summary judgment and a protective order. The district court denied all of Bjorklund's motions. This appeal followed.

**D E C I S I O N**

**I.    Waiver of Appraisal**

Preliminarily, we note that a party can waive its right to an appraisal under Minnesota law: "Any person who shall not, within 20 days after written request, appoint a qualified appraiser, as provided in the policy, shall at the election of the other party be deemed to have waived the right to appraisal, and, if it be the insurer, shall be liable to suit." Minn. Stat. § 65A.12, subd. 1. Accordingly, we begin our analysis with the text of the statute.

We review de novo questions of statutory interpretation. *See Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 301 (Minn. 2014). "The goal of statutory interpretation is to effectuate the intent of the Legislature." *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 716 (Minn. 2014). When interpreting a statute, we first examine whether the plain language of the statute is clear and unambiguous. *Frandsen v. Ford Motor Co.*, 801 N.W.2d 177, 181 (Minn. 2011). In this examination, words and phrases are given their plain and ordinary meaning. *Id.* (citing Minn. Stat. § 645.08 (2010)). "A statute is ambiguous if its language is subject to more than one reasonable interpretation." *State v. Irby*, 848 N.W.2d 515, 519 (Minn. 2014).

6

### A.    *Appointing a Qualified Appraiser*

The first issue is whether Auto-Owners waived its right to an appraisal under the plain language of Minnesota Statutes 65A.12, subdivision 1.  Bjorklund argues that Auto-Owners waived its appraisal right because it failed to appoint a qualified appraiser within 20 days after receiving Bjorklund's December 2011 letter.  Auto-Owners contends that it did not waive its appraisal right because for Bjorklund's letter to qualify as a "written request" under section 65A.12, subdivision 1, the letter also needed to specifically request Auto-Owners to appoint an appraiser.

The plain language of Minnesota Statutes section 65A.12, subdivision 1, simply requires a "written request"; it does not specify what the request must look like.  *Id.*  In the December 2011 letter, Craig Bjorklund stated, "I want to take this to appraisal and would like someone to call me to inform me of how to pursue this action and/or send me the appropriate paperwork."

Bjorklund's letter unequivocally states a desire for appraisal.  And contrary to Auto-Owners's argument, nothing in the statute requires the party making the written request to include the name of a qualified appraiser.  Thus, Bjorkland's written demand of "I want to take this to appraisal," was sufficient to qualify as a "written request" under section 65A.12, subdivision 1.

But we also note that section 65A.12, subdivision 1, is silent as to which party must appoint the qualified appraiser: the clause, "within 20 days after written request," does not specify whether the party *receiving* the written request or whether the party *sending* the written request must appoint the qualified appraiser.  One reasonable

7

interpretation is that it requires the person demanding the appraisal to appoint a qualified appraiser within 20 days. Another reasonable interpretation is that it requires the person who receives the demand for appraisal to appoint a qualified appraiser within 20 days.

The supreme court has recognized that "silence does not render a statute ambiguous unless the silence renders the statute susceptible to more than one reasonable interpretation." *Rohmiller v. Hart*, 811 N.W.2d 585, 590 (Minn. 2012). Because section 65A.12, subdivision 1, is subject to more than one reasonable interpretation as to which party must appoint the qualified appraiser, it is ambiguous. *See id.* at 590. Nevertheless, we need not resolve this ambiguity because nothing in the record shows that Bjorklund *elected* to waive Auto-Owners's right to appraisal.

**B.      At the Election of the Other Party**

At oral argument, Bjorklund's counsel acknowledged that "election" under section 65A.12, subdivision 1, requires an affirmative act. But Bjorklund argued that its decision to abstain from affirmative action here did not deprive Bjorklund of its ability to "elect" to waive Auto-Owners's appraisal right under section 65A.12, subdivision 1. We disagree to the extent that Bjorklund's actions following its December 2011 demand letter showed its continued interest in pursuing appraisal.

Under subdivision 1, the right to an appraisal is waived "at the election of the other party." Minn. Stat. § 65A.12, subd. 1. "Election" is defined as "[t]he exercise of a choice" and implies an affirmative act. *Black's Law Dictionary* 595 (9th ed. 2009). Notably, the legislature did not make the waiver automatic; instead, the party seeking to

8

waive the other party's right to an appraisal must elect to do so. Minn. Stat. § 65A.12, subd. 1.

Here, Bjorklund did nothing to "elect" to waive Auto-Owners's right to appraisal. In fact, the record shows the opposite: in its October 2012 complaint, filed almost a year after its letter requesting appraisal, Bjorklund reiterated its desire to seek an appraisal. Instead of electing to waive Auto-Owners's right to an appraisal, Bjorklund sought appraisal again. And Bjorklund only objected to appraisal when Auto-Owners moved the district court to compel appraisal in April 2013.

Because Bjorklund pursued appraisal after sending its December 2011 letter, under the plain meaning of section 65A.12, subdivision 1, Bjorklund did not "elect" to waive Auto-Owners's right to an appraisal.

**II.    Whether the District Court Erred in Affirming the Appraisal Award**

Appraisal awards are treated similarly to arbitration awards in Minnesota and to determine whether an appraisal award should be vacated, the same standard of review applies. *David A. Brooks Enters., Inc. v. First Sys. Agencies*, 370 N.W.2d 434, 435 (Minn. App. 1985). An arbitration award can be vacated if, among other things, the arbitrator refused to consider material evidence or otherwise conducted the hearing in a way that substantially prejudiced the rights of a party to the proceeding. Minn. Stat. § 572B.23(a)(3) (2014).

The party seeking to vacate the appraisal award bears the burden of proving that the appraisal panel exceeded its powers. *Cf. Nat'l Indem. Co. v. Farm Bureau Mut. Ins. Co.*, 348 N.W.2d 748, 750 (Minn. 1984). Every reasonable presumption is exercised in

9

favor of the finality and validity of the arbitration award. *Cf. id.* "Absent a clear showing that the [appraisers] were unfaithful to their obligations, the courts assume that the [appraisers] did not exceed their authority." *Hilltop Constr., Inc. v. Lou Park Apts.*, 324 N.W.2d 236, 239 (Minn. 1982).

Bjorklund argues that the appraisal award should be vacated because the appraisal panel "willfully and intentionally" excluded material evidence that substantially prejudiced Bjorklund's rights in the appraisal process. Specifically, Bjorklund contends that the appraisal panel "did not permit or accept the testimony" of Craig Bjorklund and T.C.

Generally, an arbitration award is voidable if the arbitrator refuses to hear testimony from the plaintiff or refuses to accept evidence showing the amount of the plaintiff's loss. *See Seagate Tech., LLC v. W. Digital Corp.*, 854 N.W.2d 750, 766 (Minn. 2014) (citing *Redner v. N.Y. Fire Ins. Co.*, 92 Minn. 306, 309, 99 N.W. 886, 887 (1904)). This principle applies to appraisal awards because they are treated similar to arbitration awards. *See David A. Brooks Enters.*, 370 N.W.2d at 435.

Here, contrary to Bjorklund's claim, the record shows that T.C. and Craig Bjorklund testified at the appraisal hearing. In T.C.'s affidavit, he stated that "[t]he appraisers and umpire accepted my participating by providing testimony and asked me to review the damage with them." Additionally, Craig Bjorklund's affidavit shows that the appraisal panel heard testimony from him, albeit not as much testimony as he wanted to give.

10

Bjorklund further argues that the panel should have asked Craig Bjorklund questions and allowed him to answer the questions posed by Bjorklund's appraiser. It is troubling that the appraisal panel did not hear Craig Bjorklund's full testimony regarding the condition of his buildings before and after the storms. But he was allowed to testify and, through the Sherco report, the appraisal panel received documentation of his damages. Thus while Bjorklund may not have personally testified as to his mitigation expenses, the appraisal panel considered documentation of these expenses.

In sum, Bjorklund has not presented sufficient evidence to create a clear showing that the appraisers were unfaithful to their obligations, *see Hilltop Constr.*, 324 N.W.2d at 239, or conducted the appraisal hearing in a way that substantially prejudiced his rights, *see* Minn. Stat. § 572B.23(a)(3). The appraisers reviewed the interior and exterior of all buildings, considered all claims, heard testimony from Bjorklund and his contractor, and read the Sherco reports and two Northland reports.

To be sure, the appraisers awarded much less in damages than Bjorklund desired, but nothing in the proceedings showed that the appraisers exceeded their authority. Given the strong public policy in Minnesota that favors appraisals, we cannot conclude that the appraisal award is voidable here. *See Cedar Bluff Townhome Condo. Ass'n v. Am. Fam. Mut. Ins. Co.*, ___ N.W.2d ___, ___, 2014 WL 7156914, at *6 (Minn. Dec. 17, 2014). Based on our decision above, we need not address Bjorklund's remaining arguments.

**Affirmed.**

11